STATE EX REL. VAN C. SWEARINGEN, Attorney General, *Relator*, v. JOHN B. JONES, J. J. LOGAN, JULES M. BURRUIERES, W. A. MacWILLIAMS AND W. G. BRORIEN, *Respondents*.

## Opinion Filed January 26, 1920.

1. The term "office" implies a delegation of a portion of the sovereign power to, and possession of it by, the person filling the office, a public office being an agency for the State, and the person whose duty it is to perform the agency being a public officer. The term embraces the idea of tenure, duration and duties, and has respect to a public trust to be exercised in behalf of government, and not to a merely transient, occasional or incidental employment. A person in the service of the government who derives his position from a duly and legally authorized election or appointment, whose duties are continuous in their nature and defined by rules prescribed by government, and not by contract, consisting of the exercise of important public powers, trusts or duties, as a part of the regular administration of the government, the place and the duties remaining, though the incumbent dies or is changed; every office in the constitutional meaning of the term implying an authority to exercise some portion of the sovereign power, either in making, executing or administering the laws. A State officer is one who falls within this definition and whose field for the exercise of his jurisdiction, duties and powers is co-extensive with the limits of the State and extends to every part of it.

2. Chapter 7921, Acts of Legislature aprpoved June 9, 1919, creating a commission to be known as the Florida Purchase Centennial Commission; *held* to be unconstitutional and void because it creates State officers, and fails to provide for their election by the people or appointment by the Governor as required by the constitution, and fixes their terms of office for a period longer than four years.

3.  All persons by authority of law intrusted with the receipt
    of public money, or through whose hands such money may
    pass to the treasury, are public officers, whether the service
    be general or special, transient or permanent.

A case of original jurisdiction.

Demurrers sustained.

*Van C. Swearingen,* Attorney General, and *John S. Beard,* for Relator;

No appearance for Respondents.

BROWNE, C. J.—This is a case of original jurisdiction.
An information in the nature of a *quo warranto* was filed in this court by the Attorney General against W. G. Brorein, John B. Jones, J. J. Logan, W. A. MacWilliams and J. M. Burguieres, charging them with enjoying, exercising and performing the powers, duties and functions of officers of the State of Florida, without legal authority or warrant, and in violation of the Constitution of the State of Florida.

The information in part alleges that Chapter 7921, Acts of the Legislature of the State of Florida, approved June 9, 1919, created a commission to be known as the Florida Purchase Centennial Commission, to consist of five members, who are designated in the Act, *viz:* W. G. Brorein, W. A. Blount, C. M. Cooper, W. A. MacWilliams and George W. Allen, and that by authority of Sec. 3 of the Act, the Commission elected John B. Jones, vice W. A. Blount, resigned; J. J. Logan, vice C. M. Cooper resigned, and J. M. Burguieres, vice George W. Allen, resigned. Answers were filed by all the respondents, but

that of J. M. Burguieres was not filed until after the return day, and after the Attorney General had filed a demurrer to the answers of John B. Jones, W. G. Brorein, J .J. Logan and W. A. MacWilliams. As all the answers are substantially to the same effect, the demurrer will be treated as reaching them all. Each respondent admits the allegations of the information, and says that he exercises, enjoys and performs the functions, duties, powers and franchises of a member of the Florida Purchase Centennial Committee, by virtue of Chapter 7921 of the Acts of the Legislature, approved June 7, 1919.

The demurrer attacks the sufficiency of these answers as failing to set up any valid title to the rights, privileges, powers and franchises now enjoyed and exercised by them, because such rights, privileges, powers and franchises are those of officers of the State of Florida, and that the Act under which the respondents claim to exercise their powers is unconstitutional and void.

The issue presented by the pleadings makes it necessary for us to determine if the members of the Florida Purchase Centennial Commission are State officers, and if so are the respondents holding their respective offices under a legal and constitutional appointment and authority.

It is unnecessary to go into an extended discussion of the question of what is the test of a public office as this has been fully discussed and decided by this court in State *ex rel.* Clyatt v. Hocker, 39 Fla. 477, 22 South. Rep. 721; Advisory Opinion to Governor (In re Members of the Legislature), 49 Fla. 269, 39 South. Rep. 63; State *ex rel.* Holloway v. Sheats, decided at the last term of this court.

Applying those tests to Chapter 7921, we are satisfied that the Florida Purchase Centennial Commissioners are State officers.     It is true that they lack some of the characteristics that usually distinguish officers from agents or employees, but it is not necessary for the office to have all of these characteristics.   Some of the minor or less important ones may be missing and yet the essential one—that some part of the sovereign power of the State has been delegated to them or that they exercise distinctly governmental functions be present.  Such is the condition here.

The statute in question confers large, and within the scope of the purpose of their creation, almost unlimited powers of a distinctly governmental character upon the commissioners.

They are given authority to provide and determine their own method of procedure and rules of order; they are authorized "to employ such chiefs, heads of departments, officers, foremen, engineers, superintendents, clerks, secretaries, employees and laborers, as it may deem necessary for the performance of its duties, and fix their compensation, and remove them from office or employment or reinstate them in office or employment at its sole will and pleasure."

They are "vested with full and complete power to undertake, inaugurate, create, perfect, complete, supervise, manage, control, regulate and direct an International Exposition, which is hereby authorized to be held in the State of Florida dedicated on July 16th, 1921, and inaugurated on Victory Day, November 11th, 1922, in commemoration of the Florida Purchase Centennial, at such point in the State of Florida as said commission may select."

They are "fully authorized to represent and act for the State of Florida in asking for, receiving and handling such appropriations by the United States Congress as said Congress of the United States may make, appropriate, grant or allow toward or in aid of the International Fair heretofore mentioned in this Act, and said Commission is fully authorized to ask for, receive and accept such appropriations, upon such terms and conditions as it may deem necessary or proper; and the said commission is hereby authorized to go in person or by their duly appointed representative before the United States Congress for the purpose of seeking and requesting appropriations for said International Fair."

They are "authorized to delegate any corporation that may hereafter be created in this State and under its laws for financing and administering or carrying on such International Exposition any and all of the powers granted to said commission by this Act; and in the event that a corporation is created under the general incorporation law of this State for the purpose of financing, administering and carrying on of the said International Exposition, said commission shall have power to turn over to such corporation any funds received by said commission from the United States and from individual and corporate subscriptions or otherwise."

Section 9 of the Act appropriates $10,000 "for the purpose of defraying and paying the general expenses of said commission."

The Commissioners are required to begin work as soon as the Act becomes a law, and they therefore entered upon the functions of their offices on the 9th day of August, 1919.

The International Fair provided for in the Act is "to be inaugurated on November 11th, 1922, or at such later date as said commission may determine, and to run, continue or remain open for such number of months (not less than twelve) as said commission may determine or in its judgment deem proper."

At the very shortest period provided for in the statute the International Fair would continue until November 11th, 1923, a period of four years and three months from the date when the commissioners entered upon the duties of their offices. The statute, however, does not require the Exposition to be inaugurated on November 11, 1922, but authorizes the commission to open it at a later date, and while it requires it to remain open not less than twelve months, it empowers the commissioners to keep it open longer if in their judgment they deem it proper, thus extending the term of their offices certainly beyond four years, and for an indefinite period beyond that time.

The powers conferred by the Act upon the commissioners are of a very high governmental character. They are authorized to ask from the Congress of the United States on behalf of the State of Florida, an appropriation to help the State carry on this Exposition. They are empowered to receive from the Federal Government any appropriation that it may make to the State of Florida, and may expend it on behalf of the State in holding this Exposition. They are also empowered to turn over to a corporation that may be created under the general incorporation laws of the State, any funds received from the United States, and from individual and corporate subscriptions or otherwise.

It is not conceivable that Congress would make an appropriation direct to the members of the commission. Such an appropriation, if made, would be to the State of Florida for the purpose of aiding it in holding this Exposition, and the funds derived from such an appropriation would belong to the State of Florida, to be used by it in the manner and under the terms of the Act making the appropriation.

The Act under consideration gives to the Commissioners the very high governmental function of spending the State's money without accounting to any one, and authorizing them if they so desire, to give it to some corporation to be expended by it as its fancy may suggest.

Governmental powers are divided into Legislative, Executive and Judicial. The power to appropriate money is a legislative one, and this power is given to the commission in Section 8, wherein they are authorized to appropriate any money donated to the State of Florida by Congress to a corporation that may hereafter be created.

Another high governmental function that the Act invests the commissioners with, is to accept appropriations from the Federal Goernment "upon such terms and conditions" as may be imposed upon the State by the Act of Congress making the appropriation. The power to bind the State in an agreement with the Federal Government upon such terms and conditions as Congress may impose as a condition of the appropriation, is a combined legislative and executive function.

We find no difficulty in discovering ample governmental powers conferred upon the commissioners by this Act; but rather there seems to be no limit to either the eexcutive or legislative powers that the Act seeks to con-

fer upon them, and by that test they are not only officers but officers with autocratic powers.

In the case of Commonwealth v. Evans, 74 Pa. St. Rep. 124, the court held that "All persons by authority of law intrusted with the receipt of public money, or through whose hands money due to the public may pass to the treasury, are public officers, whether the service be general or special, transient or permanent."

Apart from the reasoning by which we reach the conclusion that the members of the Florida Purchase Centennial Commission are State officers, we find support in an Advisory Opinion by the Justice of the Supreme Court of Rhode Island to the Governor, that the position of Commissioner of the United States Centennial Exposition held in Philadelphia in 1876, was "an office of trust or profit."

The Act of Congress creating the Commission, approved March 3, 1871, provided for the appointment of a Centennial Commission to be composed of one delegate from each State or territory. They were to be appointed within one year from the 3d of March, 1871, and their functions were to continue until the close of the exposition. The statute did not require them to take any oath of office; they received no salary, and there was no fixed tenure.

The powers conferred on the commissioners by the Act of Congress in question were not nearly so great as those conferred on the commissioners created by Chapter 7921, but the Justices of the Supreme Court of Rhode Island said: "It is apparent from this statement, which is but patrial, that the duties and functions of the commission were various, delicate, and important; that they could be successfully performed only by men of large

experience and knowledge of affairs; and that they were not merely subordinate and provisional, but in the highest degree authoritative, discretionary, and final in their character. We think that persons performing such duties and exercising such functions, in pursuance of statutory direction and authority, are not to be regarded as mere employees, agents, or committee men, but that they are properly speaking, officers, and that the places which they hold are offices." In Re Corliss, 11 R. I. 638.

One of the Justices dissented, but concurred with the other members of the court in holding that the position of commissioner was an office, but not one "of trust or profit."

The demurrer assails the Act, as in violation of Sec. 27 of Art. III, and Sec. 7 of Art. XVI of the Constitution of Florida.

The first ordains that "The Legislature shall provide for the election by the people or appointment by the Governor of all State and County Officers not otherwise provided for by this Constitution, and fix by law their duties and compensation."

The second, that "The Legislature shall not create any office, the term of which shall be longer than four years."

We have discussed *supra* the term for which the commissioners are appointed, and shown that it is for a longer period than four years, and the Act is therefore clearly in violation of Sec. 7 of Art. XVI of the Constitution.

It is also in violation of Sec. 27 of Art. III in that instead of providing "for their election by the people, or appointment by the Governor," the Legislature appointed the commissioners in the first instance, and gave them "the exclusive power to fill any vacancy occurring in the

commissioners," and three of them are now claiming to hold their offices by virtue of appointments by the other members of the commission.

The Legislature, no doubt, had a very definite purpose in naming in the Act the persons who were to fill these offices in the first instance, instead of providing for their selection in the manner required by the constitution. The method of their appointment, their authority to fill vacancies, and to appoint other "officers," and other provisions of the Act are all parts of an harmonious whole, so interwoven as to be incapable of separating them from the rest of the Act without destroying the palpable purpose and intent of the Legislature. We are, therefore, constrained to declare the whole Act to be unconstitutional and void.

The demurrers to the answer are sustained.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.