DADE COUNTY, *Appellant*, v. THE STATE OF FLORIDA, *Appellee.*

En Banc.

Opinion Filed March 14, 1928.

466

*A. B. & C. C. Small,* and *Price, Price, Neeley & Kehoe,* for Appellant;

*Vernon Hawthorne,* State Attorney, and *R. H. Hunt,* Assistant State Attorney, for Appellee.

WHITFIELD, J.—In proceedings brought by the county under the statute to validate bonds proposed to be issued by Dade County pursuant to Chapter 13088, Acts of 1927, an answer by the State Attorney challenged the validity of the statute upon grounds that it violates Section 27, Article III, Section 7, Article XVI, of the State Constitution as well as upon other grounds not necessary to be stated. The court held the Act to be unconstitutional and denied validation of the bonds. The county appealed.

The Constitution contains the following:

"The Legislature shall provide for the election by the people or appointment by the Governor of all State and county officers not otherwise provided for by this Constitution, and fix by law their duties and compensation." Sec. 27, Art. III, Const.

"The Legislature shall not create any office, the term of which shall be longer than four years." Sec. 7, Art. XVI, Const.

The pertinent provisions of Chapter 13088, are as follows:

"Section 1. It is hereby declared that an emergency exists which requires the immediate and adequate protection and improvement of the Ocean Front in Dade County, Florida, within the corporate limits of the City of Miami Beach; and the protection and improvement of the said Ocean Front of Dade County in said city is hereby declared to be a county purpose, and also to be a city purpose of the said City of Miami Beach, in said county and State.

"Section 2. Immediately upon this Act becoming a law there shall be and is hereby created a Commission, to be known as the Dade County Ocean Front Protective Commission, and which commission shall be composed of five members, two of whom hereby named as representing Dade County shall be John C. Knight and J. E. Lummus, citizens of Miami, in said county, and two of whom hereby named as representing the City of Miami Beach, shall be T. J. Pancoast and W. A. Kohlhepp, both of whom reside in the said City of Miami Beach, and the fifth member of said commission, who shall be chairman thereof, shall be chosen and appointed by the majority vote of the said four members herein named; provided, that should either or both of the members of the said commission herein named in behalf of the County of Dade, decline to act, die, resign or remove from said County of Dade, then the Board of County Commissioners of said county shall appoint and designate some suitable person or persons to take the place of such member or members, and likewise, should either or both of the members of the said Commission herein named on behalf of the said City of Miami Beach, decline to act, die, resign or remove from said County of Dade, then the City Council of said City of Miami Beach shall appoint and designate some suitable person or persons to take the place of such member or members. The members of said Commission, except the Chairman, shall serve without pay; and

shall continue to hold their respective offices until the work contemplated by this bill shall have been completed; provided, the members herein named in behalf of the County of Dade and their successors as such, if any, shall be subject to removal by the Board of County Commissioners of said County for malfeasance or misfeasance in office, and their successors shall be appointed as above indicated, and likewise the members herein named in behalf of the City of Miami Beach, and their successors as such, if any, shall be subject to removal by the said City Council of Miami Beach for malfeasance or misfeasance in office, and their successors shall be appointed as above indicated. The Chairman of the said Commission shall be allowed such salary and perform such duties as said Commission shall fix and prescribe and shall retain his position as such and serve as a member of the said Commission until the said work contemplated by this Act shall have been completed; provided, he may be removed from office as such Chairman, and as a member of said Commission, by the unanimous vote of the other four members thereof, for any malfeasance or misfeasance in office which, in the judgment of said other four members, shall constitute just cause for such removal, and his successor as such member and as Chairman of said Commission, shall be chosen by a majority vote of the other four members of said Commission; provided, in all cases, if a majority of the said four members of said Commission named herein, or their successors, shall be unable to agree on said Chairman, he shall be named and designated by the Judges of the Circuit Court of the Eleventh Judicial Circuit of said State.

"The four members of said Commission hereby appointed shall be allowed, from time to time, their expenses necessarily incurred in carrying out and performing the duties imposed upon them by this Act.

"It shall be the duty of said Commission immediately to make or cause to be made a survey of the Ocean Front of Dade County, lying within the territorial limits of Miami Beach, North of Norris Cut, with reference to the proper means and methods of protecting and improving the same as hereinafter more specifically provided for; and the said Commission shall have power and authority to employ competent engineers and other assistants for such purpose and incur such reasonable expenses connected therewith, as may, from time to time, be assented to or approved by the said Board of County Commissioners and the said City Council.

"Section 11. That immediately upon the selection of the four members of said Commission, as above mentioned, and the selection by them, or otherwise, of the fifth member thereof, the several members of the said Commission shall qualify themselves by filing with the Clerk of the Circuit Court in and for said County, their written oath that they will well and faithfully perform the duties imposed upon them under this Act and by the execution of a good and sufficient bond conditioned upon the faithful performance of their duties as members of said Commission, which said bond shall be in an amount fixed by the joint action of the Board of County Commissioners and the said City Council, and which shall be likewise approved by the joint action of said two bodies, and shall be payable, jointly, to the County of Dade and the City of Miami Beach, and when so approved, shall likewise be filed with the Clerk of the Circuit Court of said County; and it is further provided that the said Board of County Commissioners and the said City Council shall have the authority from time to time, by joint action, to require bond in additional amounts, and to relieve the said Commissioners from amounts of the bonds already furnished, as said two bodies

shall, from time to time, determine proper; provided, in case of disagreement between said board and said City Council with reference to any of the matters set out in this section of this Act, the matters disagreed upon shall be referred to the Circuit Judges of the Eleventh Judicial Circuit of Florida, and their decision thereon shall be binding on all parties.

"Section 12. As soon as practical after said Commissioners shall have been appointed and qualified, they shall meet and organize the said Commission, and shall appoint some member of their body or some other person, if they shall so desire, as Secretary of the Commission, and shall allow to said Secretary, from time to time, such reasonable compensation as they deem proper; and said Commission shall have the power and authority, from time to time, to select and appoint engineers and such other employes as may be reasonably necessary in the performance of the duties of said Commission, and to pay to such employes such reasonable compensation as said Commission may determine.

"Section 13. Immediately after the said Commission shall be organized it shall be its duty forthwith to make a survey and study of the Ocean Front of Dade County, lying within the city limits of Miami Beach, north of Norris Cut, with reference to the protection and improvement of the same, including the building of sea-walls, dikes, jetties, groynes, and other measures that will further protect the Ocean Beach Front, and they shall devise a plan or a set of plans with estimates of the costs of the same, and shall within thirty days, if practical, submit identical copies thereof to the said Board of County Commissioners, and to the said City Council, and within thirty days thereafter, the said Board of County Commissioners and the said City Council, and the Commission provided for herein,

shall meet in joint session, at the County Court House of said County, and approve or disapprove of such plans and estimates.

"When the Board of County Commissioners and the City Council aforesaid shall agree with the Commission aforesaid upon the plan for the said protective and improvement work, such agreement shall be evidenced by a joint resolution of the Board of County Commissioners and the City Council, which resolution shall be spread upon the minutes of each of said bodies, and upon the adoption of such resolution, the plans and estimates so approved shall be the plans and estimates for the protective and improvement work aforesaid, and shall be followed and carried out in the prosecution of such work by the said Commission, except as same may thereafter be changed, altered or amended, or discontinued, by the joint action of the said Board of County Commissioners and the said City Council; provided, if the said board and the said City Council shall be unable to agree with reference to the approval of said plans and estimates, within thirty (30) days after the same shall be presented to them, respectively, by the said Commission, then and in that case the matter of the approval of said plans and estimates shall be determined by eight affirmative votes of a joint meeting of a majority of the five members of said board, five members of said City Council and the five members of said Commission, reasonable notice thereof having been duly given, and immediately upon approval, as aforesaid, the said Commission shall enter upon the performance of its duties in carrying out the work herein provided to be done—provided, however, that no plans or estimates shall be approved of which the estimated costs shall exceed the amount of money available or reasonably expected to be available from the proceeds of the bond issue aggregating three

million dollars ($3,000,000.00), par value, herein authorized, unless the said City of Miami Beach shall, before the adoption of such plans and estimates, provide additional funds for said work, either by the issuance of additional bonds over and above the said amount of one million dollars ($1,000,000.00) herein first above authorized, or by assessment on benefited lands, or in some other authorized manner, in which event the amount of money proposed to be expended under such plans and estimates may be increased in an amount equal to the additional bond issues or other funds so provided by the said City of Miami Beach for such work; and provided further that if, during the progress of said work, any change, modification, alteration or discontinuance of the said work according to the original plans adopted as above provided for shall be recommended by the said Commission to said board and to said City Council, and the said board and said City Council are unable to agree with reference to the approval thereof, then and in that case the matter of the approval of the same shall be submitted to the said three bodies of five members each, and the action of eight members thereof as aforesaid, with respect to said changes, modifications, alterations or discontinuances shall be conclusive within the limits of this Act as to costs, provided, that minor changes or alterations, not changing the general plan adopted, nor increasing the estimated costs, may be made, from time to time by a majority vote of the Commission, itself.

"Section 15. Upon the plans and estimates for said work having been approved as aforesaid, it shall be the duty of said Commission to name and designate one or more banks in each of the cities of Miami and Miami Beach as the depositories in which all monies made available to the said Commission to be used in the aforesaid work, shall be deposited, and said funds shall be drawn from said banks

only by checks ordered to be drawn and issued by said Commission and signed in each case by the Chairman of the Commission and the Secretary thereof, in payment of the legitimate costs and expenses of said Commission in the prosecution of said work, and each of the said banks so named as depositories to be required to furnish a bond approved by the said Commission, in such sum and with such sureties, or secured in such manner for the security of the monies so deposited, as the said Commission may determine to be necessary.

"Section 16. At once upon the said plans and estimates having been approved as aforesaid, it shall be the duty of said Commission to make up and file with said Board of County Commissioners and said City Council, an estimate setting forth the amount of money necessary to be used in the prosecution of such work during the next ensuing three calendar months, beginning with the first day of the month next following the filing of the estimate, and thereupon, it shall be the duty of the said City Council to deposit or cause to be deposited to the credit of said Commission in one or more of said depositories, one-third of the amount of such estimate, and thereupon, it shall be the duty of said Board of County Commissioners concurrently with such deposit by said City Council, to so deposit or cause to be so deposited two-thirds of the amount of such estimate. The said funds so deposited shall be subject to the checks of said Commission as above provided; and thereafter, from time to time, it shall be the duty of said Commission on or before the 15th day of the last calendar month of each such period of three months, to make up and file with the said Board of County Commissioners and with said City Council, an estimate in duplicate of the amount of money approximately necessary to be used in the protection of such work during the next following three calendar months,

and it shall thereupon be the duty of the said City Council to deposit with one or more of said depositories one-third of the amount of such estimate and the said Board of County Commissioners shall then likewise concurrently deposit with one or more of said depositories two-thirds of such estimated amount, and such course shall be followed during the further prosecution of such work, and until the completion of same, or for such length of time as the funds therefor, provided by the terms of this Act, shall extend or be sufficient.

"Section 17. The said Commission shall not commence the work of protecting and improving the said Ocean Front, other than to prepare the plans and estimates of the costs thereof as herein provided for, nor shall they enter into any contractual relationship with regard thereto, or contract any indebtedness with reference to the same, until the said plans for said work, and estimates for the costs thereof, have been adopted or approved by the said Board of County Commissioners and said City Council or otherwise as herein provided for, nor until the necessary funds for the payment of the first three months estimated expenses of such work have been deposited to the credit of said Commission as above provided; but, after the approval and adoption of said plans and specifications, and the deposit of said money to the credit of said Commission as aforesaid, the said Commission shall thereupon enter upon the work of carrying into execution and completion the said plans of protection and improvement, and shall diligently prosecute the same until the completion thereof, in accordance with the said plans and estimates so adopted, and in conformity with the provisions of this Act.

"Section 20. The said Dade County Ocean Front Protective Commission shall have the right to sue and be sued in said name in any court; to make and enter into contracts

in connection with said work, subject to the provisions of this Act; to adopt and use a common seal, and to do and perform all those things which may be necessary for carrying the purposes of this Act into effect, or which may be incidental thereto.''

The statute provides for bonds to be issued and sold by the county, and by the city, the proceeds of which shall be used by the Commission for the designated project. Tax levies are authorized to pay the bonds.

As indicated by its title and contents, Chapter 13088 purports to declare that an emergency exists for the immediate and adequate protection and improvement of a stated portion of the Ocean Front in Dade County, Florida, within the City of Miami Beach, to declare such protection and improvement a county purpose and also a city purpose, to provide for and create a commission to be known as the Dade County Ocean Front Protective Commission, and to prescribe its powers and duties and to provide for its compensation, to provide for the issue of bonds by the county and the city to raise money for the project, and for the expenditure of the bond money in providing the contemplated protection and improvement.

The project contemplated by the Act is an administrative function requiring the exercise of sovereign governmental powers. Such powers may legally be exerted only by officials duly commissioned for that purpose. The Constitution does not contemplate that essential governmental power or authority may be exercised by a corporate agency whose members are not duly commissioned officers.

The term ''office'' implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office, while an ''employment'' does not comprehend a delegation of any part of the sovereign authority.

An employment does not authorize the exercise in one's own right of any sovereign power or any prescribed independent authority of a governmental nature; and this constitutes perhaps the most decisive difference between an employment and an office, and between an employe and an officer. S.ate *ex rel.* Holloway v. Sheats, 78 Fla. 583, 83 South. Rep. 508.

All persons by authority of law instructed with the receipt of public money, or through whose hands such money may pass to the treasury, are "public officers," whether the service be general or special, transient, or permanent. State *ex rel.* Swearingen v. Jones, 79 Fla. 56, 84 South. Rep. 84.

The Act provides that the commission to be known as the Dade County Ocean Front Protective Commission, shall be composed of five members, two of whom are named in the Act as representing Dade County, and two others named as representing the City of Miami Beach, the fifth member to be chosen and appointed by a majority of the other four members; that successors to the members shall be appointed by the County Commissioners and City Council respectively in case of declination, death or resignation, etc., and provides also for removal "for malfeasance or misfeasance in office;" that members "shall continue to hold their respective offices until the work contemplated shall have been completed;" that the members of the commission shall qualify themselves by filing an oath and give bond that they will faithfully perform the duties imposed on them by the Act.

These provisions and the governmental powers and duties conferred upon the commission by the Act clearly give authority that can legally be exercised only by duly commissioned officers.

The duties of an officer as distinguished from an employment, are continuous in their nature and are defined

by rules prescribed by government and not by contract, consisting of the exercise of important public powers, trusts or duties as a part of the administration of the government, the duties remaining though the incumbent dies or is changed.

Every office in the constitutional meaning of the term implies au'hority for the exercise of some portion of sovereign power either in making, executing or administering the law. State *ex rel.* Clyatt v. Hocker, 39 Fla. 477, 22 South. Rep. 721.

Section 27, Article III of the State Constitution, means that when not otherwise provided in the Constitution the executive and administrative governmental functions of the State and counties shall be performed by officers who shall be elected by the people or appointed by the Governor, and that the duties and compensation of such officers shall be fixed by law. Section 7, Article VIII requires that such county officers shall be commissicned by the Governor, and that before being commissioned they shall file with the Secretary of State a bond to be approved by the County Commissioners and by the Comptroller. Section 14, Article IV, provides that all commissions shall be in the name and under the authority of the State of Florida, sealed with the great seal of the State, signed by the Governor, and countersigned by the Secretary of State. Section 2, Article XVI, requires every officer to take the prescribed oath. Section 7, Article XVI, provides that the Legislature shall not create any office, the term of which shall be longer than four years. Section 15, Article IV, provides for the suspension and removal of county and other officers for malfeasance or misfeasance, or neglect of duty in office, for the commission of any felony, or for drunkenness or incompetency.

Chapter 13088 does not form a special taxing district for

the contemplated local protection and improvement, but expressly declares such project to be a county purpose and a city purpose, and provides for the issue of county and city bonds, to be paid by county and city taxation,. to defray the expense of the project. While the contemplated improvement is not county wide or city wide, in its area, it is to be paid for by the county and the city as entireties; and the funds raised by the bond issues will be county funds and city funds to pay for a project declared to be a county purpose and a city purpose.

The administrative functions in executing the project require the exercise of county governmental authority. The Constitution contemplates that administrative functions that are governmental in their nature involving discretion and responsibility, and not merely clerical or expert assistance, shall be performed by duly commissioned officers.

The statute requires each member of the Commission to take an oath and to give a bond; provides for filling vacancies; and makes the members subject to removal "for malfeasance or misfeasance in office." These features relate to officers, and not to clerical or expert assistants. The provisions as to oath, bond and removal do not accord with the Constitution.

The statute attempts to authorize the Commission to designate depositories of county funds and to decide what security shall be given by the depositories; to authorize the Commission to participate in determining the plans for the governmental project; to authorize the Commission to draw checks on county funds; to authorize the Commission to pay the chairman of the Commission and its employes such compensation as the Commission shall determine. These and perhaps other provisions are functions that the Constitution contemplates shall be performed only by duly elected or appointed and commissioned officers; and the

members of the Commission under the statute are not elected by the people or appointed by the Governor or commissioned by the Governor; nor do they give the bond or file the oath in the manner required by the Constitution.

The statute purports to confer upon a non-official corporate commission authority to make plans and estimate for an ocean front protection and improvement as a public purpose and burden, and in the event of disagreement between the County Commissioners and City Council, to have the deciding vote in adopting or changing such plans and estimates, and also to receive and disburse county funds for a declared county purpose. This is an attempt to confer county governmental authority that is official in its nature and must be exercised by officers who are required by the Constitution to be elected by the people or appointed by the Governor. The members of the Commission are not elected by the people or appointed by the Governor; and a corporate body composed of non-official members cannot be authorized to perform sovereign governmental functions that the Constitution intends shall be performed by duly commissioned officials. The statute violates Section 27, Article III, of the Constitution.

The statute does not in any way define or limit the very general and broad authority given the non-official Commission other than to make a survey and study of a designated ocean front with reference to the protection and improvement of the same, including the building of sea walls, dikes, jetties and other measures that will further protect the Ocean Beach Front, and when plans are approved and funds are provided, to prosecute the plans for protection and improvement of the ocean front. This is an unlawful delegation to a non-official body administrative unlimited authority for the construction of an extraordinary governmental project to be paid for by taxation.

As the administrative agency provided by the statute for executing its provisions violates organic law, the statute is not operative in essential particulars.

The final order denying validation of the bonds is affirmed.

ELLIS, C. J., AND TERRELL, STRUM AND BUFORD, J. J., concur.

BROWN, J. (dissenting):

The term "office" has respect to a "permanent public trust to be exercised in behalf of government." It implies tenure, duration, emoluments and duties, and consists of the exercise of "important public powers, trusts or duties, as a part of the regular administration of government." Clyatt v. Hocker, 39 Fla., 477, 486; 22 So. 721, 723. This Act, upon its face, is an emergency measure. It manifestly represents an effort to protect the water front against any possible repetition of the damage done by the hurricane which swept over that section in September, 1926, some six or seven months before the Legislature convened. The duties of the Commission therein provided for are transient, and end as soon as the work is completed, which might well be within a year or so. Though the purpose of the Act is evidently to effect a county wide benefit, the duties of the Commission are not co-extensive with the limits of the county, but pertain to the ocean front within the limits of the City of Miami Beach—a very small fraction of the county. The work is to be done under the supervision of the county and city officers jointly and with funds provided by the county and city. So, even if officers, they are certainly not exclusively county officers. But, as the duties imposed on the Commission are merely transient, to meet an emergency, and not those of a "permanent public trust," and as the Act does not make the Commission

therein provided for "a part of the regular administration of government," and as their work is for both the city and the county and confined to a very small fraction of the county, how can they be held to be "county officers" within the meaning of the leading case of Clyatt v. Hocker? I cannot but think that when our Constitution makers provided that all State and county officers, when not otherwise provided by the Constitution, should be appointed by the Governor or elected by the people, they had in mind officers whose offices would be a part of the permanent machinery of State or county government, or extending at least to the four-year period, and did not intend that this rule should apply to boards and commissions created for temporary or transient purposes, or to meet some pressing emergency, whose work would be supplemental to and under the supervision of regularly constituted officials, and which would pass out of existence as soon as their work was done.

If the clause giving the Commission members the right to vote when there is a disagreement between the County Commissioners and the City Council be void, this clause might be regarded as stricken from the Act and the remainder left intact without necessarily frustrating its obvious purpose. And if any such disagreement should, if ever, take place, the members of the Commission could be enjoined from attempting to exercise this purported power, leaving the officers of the county and city to compose their differences among or between themselves. But the mere possibility that such disagreement might arise would hardly warrant holding the entire Act unworkable and invalid.

The rule usually applied before striking down a legislative Act on the ground of unconstitutionality is that the Act must be shown to be unconstitutional beyond all reasonable doubt. I hardly think such a showing has been made here.