STATE, *ex rel.* THOMAS E. SWANSON, MAXWELL BAXTER and A. J. RYAN, v. B. W. STRICKLAND, E. K. DELOACH and H. G. LABREE.

166 So. 313.

En Banc.

Opinion Filed February 18, 1936.

Rehearing Denied March 14, 1936.

*G. H. Martin, Maxwell Baxter, Thomas E. Swanson* and *Claude Pepper,* for Relators;

*R. R. Saunders* and *E. B. Griffis,* for Respondents.

DAVIS, J.—This quo warranto relates to the Broward

County Port District.* The controversy involved concerns the personnel of its officers.

In a proceeding filed at this term of Court we have held that the Governor had no authority, absent some legislative sanction other than the Act of 1931 (Chapter 15107, Special Acts 1931) to make appointments of members of the Broward County Port District. State, *ex rel.* Landis, Attorney Gen., v. Baxter, 122 Fla. 312, 165 Sou. 271 (opinion filed January 2, 1936). In an earlier decision we held that the 1931 statute governing the Port District contemplated the election of the members of the Broward County Port Authority at the November election, 1934, and that no such election having been called or held on the date prescribed by law therefor, that a subsequent contested election held on December 11, 1934, was ineffectual. Kuhn v. Swanson, 118 Fla. 335, 159 Sou. Rep. 29.

The inquiry in the present case is whether or not the attempted action of the 1935 Legistlature in passing Chapter 17506 (House Bill No. 1518), Special Acts 1935, Laws of Florida, to supply the omissions and defects pointed out by us as infecting the earlier Acts, was an effectual exercise

---

*Chapter 12562, Special Acts 1927, creating Broward County Port District, defining boundaries, providing for government, powers, etc.; Chapter 13940, Special Acts 1929, amending certain sections of Chapter 12562, and re-enacting certain other sections; Chapter 15107, Special Acts 1931, abolishing and re-establishing Broward County Port District; Chapter 16636, Special Acts of 1933, abolishing Broward County Port District and creating Port Everglades Harbor District (not ratified at referendum election); Chapter 17507, Special Acts 1935, amending Chapter 15107, Acts 1931, with reference to Broward County Port District; Chapter 17506, Special Acts 1935, abolishing Broward County Port District under Acts of 1931 and creating new Broward County Port District as successor, with new officers and new powers.

of legislative power. If it was, then the quo warranto brought by plaintiffs, as claimants under the Act of 1931 (Chapter 15107, *supra,*) must fail, and judgment be rendered herein for the respondents.

Chapter 17506, Acts 1935, *supra,* provides in substance that Chapter 15107, Acts 1931, *supra,* be repealed; that a new "Broward County Port District" as defined by the 1935 legislation be set up in place of the 1931 district; that the newly created district and its Authority shall succeed to the rights, titles, interests and liabilities of the old district; that it shall be governed by a new staff of officials to be designated as the "Broward County Port Authority"; that such new staff of officials should consist of three "Port Commissioners" who should be qualified electors and freeholders residing in the district as newly defined; that E. K. DeLoach, H. G. LaBree and B. W. Strickland, who had theretofore been appointed and commissioned by the Governor as members of the Broward County Port Authority, should, by virtue of the statute creating the new Port District, become and succed to the offices of Port Commissioners of the Broward County Port Authority, to have and to hold their offices as such until the first Tuesday after the first Monday in January, 1937, or until their successors, to be elected or appointed as such pursuant to the new Act, should be duly installed and qualified.

This quo warranto attacks the title to office of respondents DeLoach, LaBree and Strickland as claimed and held by them under the terms of Chapter 17506, the 1935 Act last passed, construed in connection with an earlier 1935 Act (Chapter 17509) which had amended Chapter 15107, Acts 1931, and under which the Governor had appointed DeLoach, LaBree and Strickland to the office as "Members" of the Broward County Port Authority.

The last enacted statute, Chapter 17506, Acts of 1935, *supra,* not only abolished the old Broward County Port District, and the old Broward County Port Authority, as theretofore set up and existing under Chapter 15107, Acts 1931, as amended by Chapter 17509, Acts 1935, but abolished and superseded (with the offices of "Port Commissioners") the pre-existing officers that had been theretofore designated as "Members" of the Broward County Port Authority under the Act of 1931.

At the outset, we are confronted with objections to the right of relators to maintain this suit in quo warranto in the State's name without the joinder or consent of the Attorney General. Since the right of Swanson, Baxter and Ryan, the plaintiffs herein, to hold the offices of "Members" of the Broward County Port Authority under the Act of 1931, until their successors should be duly selected and qualified has been judicially confirmed by this Court in its recent opinion in State, *ex rel.* Landis, v. Baxter, *supra,* filed January 2, 1936, we think that relators, as *claimants* to the offices held by respondents, which have no constitutional existence if relators' contention with regard to the validity of the 1935 Acts of the Legislature are sound, entitle them to maintain this proceeding in quo warranto under authorty of Section 5447 C. G. L., 3582 R. G. S., upon refusal of the Attorney General to institute the proceedings in the name of the State upon such claimants' relation. The refusal of the Attorney General to act in this case has been duly alleged in the information and such allegation is not controverted.

It is next to be considered whether or not Chapter 17506, Special Acts of 1935, Laws of Florida, is sufficient to confer title upon respondents DeLoach, LaBree and Strickland to the offices of "Port Commissioners" of Broward County

Port District. These offices they claim the right to hold as against relators, on authority of the Governor's appointments made in accordance with Chapter 17507, Special Acts 1935, Laws of Florida, which appointments by the Governor were in and by the terms of Chapter 17506, *supra,* expressly recognized and continued in force by the new Act, which in effect named and made the Governor's appointees the temporary officers of the newly created Broward County Port District until a regular election in the District could be held pursuant to the new law, and the respondents' successors duly qualified and installed as Port Commissioners pursuant to their election as such.

Relators Baxter, Swanson and Ryan claim in their quo warranto information that no successors to their offices have been lawfully chosen as required by Chapter 15107, Acts of 1931. This is undoubtedly true, as it was so held in the cases of Kuhn v. Swanson, *supra,* and State, *ex rel.* Landis, v. Baxter, *supra.* They further contend that Chapter 15107, under which their own title to office is asserted in this case, has never been constitutionally amended or repealed and that therefore their several terms of office under Chapter 15107, *supra,* have not expired or been terminated by operation of law. The latter contention is made notwithstanding the passage and approval of House Bill No. 915 (Chapter 17509) and of House Bill No. 1518 (Chapter 17506) by the 1935 Legislature and the appointment by the Governor of successors to relators as authorized by said House Bill No. 915 (Chapter 17509). The reason for the contention so made is the relators' assertion that neither of said bills (House Bill No. 915 nor House Bill No. 1518) was constitutionally passed by the Legislature and therefore neither of them ever became a valid law of this State, in view of

the requirements of Section 21 of Article III of the State Constitution.

In support of the last stated proposition, the information alleges that the respondents claim title to the offices of members of the Broward County Port Authority by virtue of appointments made by the Governor of the State of Florida pursuant to the provisions of House Bill No. 915, enacted by the Legislature of the State of Florida at its session in the year 1935, but that the said appointments' are null and void for the reason that notice of intention to apply to the Legislature to pass said Bill did not state the locality to be affected, nor the substance of the Bill, as well as other reasons; that the respondents also claim title to the offices of members of the Broward County Port Authority pursuant to the provisions of House Bill No. 1518, passed by the Legislature of the State of Florida at its session in the year 1935, but that the said Bill so passed is null and void for the reason that notice of intention to introduce said Bill was not published at least thirty days prior to its introduction into the Legislature and that the' Act, as introduced and passed, materially varies from the statement of the substance contained in the notice so published, as well as other grounds.

We do not so view the applicable law of this case.

While Section 21 .of Article III of the Constitution is mandatory, it has never been put directly within the province of the courts to so exactly and literally review and revise the determination of the Legislature under it as to matters of mere formulae prescribed by it, as to remove from the province of the legislative branch of the government, *all* privilege of deciding questions involving the sufficiency of a particular given notice to comply with the constitutional intendments.

Notwithstanding the fact that under the constitutional section (Section 21 of Article III), as amended in 1928, the courts are now permitted, as well as required, to make judicial inquiry as to compliance with the advertising of special or local laws, a power that was denied to the judiciary under the original section (Stockton v. Powell, 29 Fla. 1, 10 Sou. Rep. 688, 15 L. R. A. 42), yet it is still within the initial province of the Legislature itself, when a special or local law has been introduced under circumstances *purporting* to show attempted compliance with the Constitution as to advertising it as local legislation in the affected locality, to thereupon ascertain and decide whether the required notice that has been given is sufficient for the purpose, and to exercise in that behalf its legislative judgment in determining whether or not such particular notice given, as established in the Legislature by proof of it there, has been so sufficiently and fairly published in the affected locality, as to amount to a substantial compliance with the purpose and intent of the Constitution on that subject, as specified in Section 21 of Article III of the Constitution and statutes passed to carry the same into effect.

. We think that the legislative record shows proof of the publication of a notice of intention to pass House Bills No. 915 and No. 1518, sufficient to sustain the judgment and determination of the Legislature as it appears on pages 519 and 1401 and 1402 of the Journal of the House of Representatives (1935 Regular Session) to the effect that "evidence that said bills had been published in compliance with Section 21 of Article III of the Constitution has been established in this Legislature."

Only when a legislative determination of compliance with Section 21 of Article III of the Constitution of Florida, as amended, can be said beyond a reasonable doubt, to be wholly

unsupported by the entries that appear on the legislative journals, or by what is disclosed by a reference to the bill itself, as introduced, are the courts warranted in striking down as unconstitutionally passed an otherwise duly enacted local law on the ground that amended Section 21 of the State Constitution has not been complied with. Compare: Harrison v. Wilson, 120 Fla. 771, 163 Sou. Rep. 233.

Having found that House Bill No. 915 (Chapter 17509) and House Bill No. 1518 (Chapter 17506) duly passed the Legislature and became valid and controlling laws as to the Broward County Port District, the Broward County Port Authority and the Broward County Port Commissioners, it follows that relators have no title to the offices claimed by them under Chapter 15107, Special Acts of 1931, which has been repealed, therefore the demurrer of respondents to the information in quo warranto must be sustained and judgment entered thereon for respondents. The constitutional writ heretofore issued in this cause is dissolved.

Judgment for respondents on demurrer to information in quo warranto entered and constitutional writ heretofore issued dissolved.

WHITFIELD, C. J., and TERRELL and BUFORD, J. J., concur.

ELLIS, P. J., and BROWN, J., dissent.

BROWN, J. (dissenting).—I think the purpose of Section 21 of Article III as amended was to require absolute compliance therewith, and that no longer should any presumption of the sufficiency, or the publication, of the notice be indulged merely because the legislative journals recited that proof had been "established in the Legislature."

It clearly makes the validity of special and local legislation dependent upon such compliance, which compliance must be shown by journal entries. Board of Public In-

struction v. Brown, 114 Fla. 711, 154 So. 850; Milner v. Hatton, 100 Fla. 210, 129 So. 593. I do not think the journal entries in this case show a proper compliance with the constitutional requirements. Douglas v. Webber, 99 Fla. 755, 128 Sou. 613. There was a material difference between the bill as introduced and passed and the published notice as published. State, *ex rel.* Wilkinson, v. Allen, 219 Ala. 590; 123 So. 36. Section 21 of Art. III, as amended in 1928, itself provides how the evidence that such notice has been published shall be "established in the Legislature." No discretion is left to the Legislature. It also expressly commands that the published notice "shall state the substance of the contemplated law." One of the objects of the amendment of 1928 was to take from the Legislature the power of itself finally deciding the question as to whether the required notice had been published as required by the Constitution. The courts cannot escape the duty now imposed upon them.

ELLIS, P. J. (dissenting).—The relators, Swanson, Baxter and Ryan were officers and members of the Broward County Port Authority, the governing body of the Broward County Port District created by Chapter 15107, Laws of Florida, 1931.

At the time of the enactment of that statute, Swanson, Ryan, Wray and Sherwin were the members of the old Broward County Port Authority created by Chapter 12562, Laws of 1927, and amended by Chapter 13940, Laws of 1929. Sherwin died after the enactment of Chapter 15107, *supra,* and Baxter was appointed by the Governor to succeed him as a member of the Port Authority.

No valid election was ever held under Chapter 15107, *supra,* to choose the successors of Swanson, Baxter, Ryan

and Wray. See Kuhn v. Swanson, *et al.,* as Broward County Port Authority, 118 Fla. 335, 159 South. Rep. 29.

The Act of 1931, Chapter 15107, *supra,* provided that the present members of the Port Authority should hold the offices until January, 1935, or until their successors had been elected and qualified.

In a later case it was held by this Court that the Governor had no authority to make appointments of members of the Port Authority upon the assumption that their terms of office under the Act of 1931 expired on January 1, 1935, because it was clear that the Act contemplated that the members of the Port Authority chosen under the Act of 1931 should continue in office until their successors were elected by the qualified electors of the Port District. See State, *ex rel.* Landis, Atty. Gen., v. Baxter, 122 Fla. 312, 165 South. Rep. 271, opinion filed January 1, 1936.

Now in 1935 the Legislature, by Chapter 17509, Special Acts, amended Sections 9, 10, and 12 of Chapter 15107, *supra.* That Act of 1935 was approved by the Governor May 18, 1935. The purpose of the Act among others seems to have been to empower the Governor to appoint three members of the Port Authority in place of the four members whose terms under Chapter 15107 expired on January 1, 1935. It is unnecessary, however, to discuss the Act of 1935, Chapter 17509, *supra,* because a few days later the Legislature enacted Chapter 17506. It was approved June 5, 1935. That Act repealed Chapter 15107, *supra,* which if valid carried with it the amendments provided for by Chapter 17509, *supra.*

Chapter 17506 established a new "Broward County Port District." The Act provided that the governing authority of the District should be known as the "Broward County Port Authority" and should consist of three "Port Com-

missioners," prescribing their terms of office, their election, the filling of vacancies, occasioned by death, resignation or removal, by appointment by the Governor.

It provide that DeLoach, LaBree and Strickland, "who have heretofore been appointed and commissioned by the Governor as members of the Broward County Port Authority, are hereby named and designated as the three Port Commissioners to constitute the said Port Authority."

But the case of State, *ex rel.* Landis, Attorney General, v. Baxter (decided January 1, 1936), *supra,* held that the Governor had no authority under the Act of 1931 to appoint members of the Port Authority in place of those chosen under that Act whose successors had not been elected and whose terms were to expire under that Act in January, 1935, or who were to continue in office until their successors were elected and qualified. As no valid election was held those who were chosen under the Act of 1931 continued to hold the offices.

The naming of DeLoach, LaBree and Strickland in the Act of 1935, Chapter 17506, as the three Port Commissioners to constitute the Port Authority could derive no virtue or power from the attempted appointment of them by the Governor, because that attempted appointment was null and void if made under Chapter 15107, *supra,* or if made under Chapter 15709, Acts 1935, *supra,* it nowhere appears that they ever went into office and supplanted Swanson, Baxter and Ryan, which the issuing of the constitutional writ in this case recognized.

Upon the enactment of Chapter 17506, *supra,* Broward County Port District, as the same was established in 1931, passed out of existence and a new Broward County Port District came into existence with its new powers and limitations. Swanson, Baxter and Ryan were *de facto* officers

of the new Port District, because they were the legally constituted Port Authority under the Act of 1931 and passed into control of the new district and remained so until the officers of the new district should be chosen under the authority of the Constitution and law.

They were *de facto* officers of the new district because they were in possession of the offices, powers, property and franchises of the old district which were required to be surrendered to the legally chosen officers of the new. See Art. IV, Chapter 17506.

The Legislature therefore undertook to appoint the officers of the new Port Authority and limit the term during which they should hold their offices. The Act provided that the officers named by the Legislature should hold office until the first Tuesday after the first Monday in January, 1937, or until their "successors are elected or appointed and qualified."

Chapter 17507, Special Acts 1935, Laws of Florida, which was approved May 9, 1935, made no provision for the appointment by the Governor of Port Authorities or Port Commissioners. Whether the Governor under Chapter 17509 appointed three members of the Broward County Port Authority to supplant the four who were duly chosen under the 1931 Act does not appear in this record, but if he did appoint them the Act of 1935, Chapter 17506, repealed Chapter 17509, which was merely an amendment to Chapter 15107 expressly repealed by Chapter 17506, *supra*. The recognition and attempted continuing in force of an act of the Governor which was brought to an unfruitful end by the repeal of the Act under which he may have made the appointment, could have no other effect logically than an attempted appointment of the three Port Commissioners by

the Legislature instead of by the Governor, or instead of an election by the people as the Constitution requires.

To say that the Legislature merely recognized and continued in force by Chapter 17506, *supra,* the Governor's appointment of Port Commissioners under Chapter 17509, *supra,* which was an amendment of Chapter 15107, *supra,* creating the district which was abolished by Chapter 17506 is the use of words which confuse thought.

The naming of Port Commissioners by the Legislature could give no force or effect to the Governor's act appointing Port Commissioners for the District created by Chapter 15107, as amended by Chapter 17509, because that appointment by the Governor was nullified by Chapter 17506, which abolished the District for which the Governor named the Port Commissioners, and it cannot be said that the Governor in making the appointment intended that his appointees should be the Port Commissioners of a new district not to be created until thirty days thereafter. Such a statement would be an incongruity.

The naming by the Legislature of the same persons to be Port Commissioners for the new district therefore was merely an appointment by the Legislature of officers to fill the offices created by the new Act. Nor was the appointment temporary, for they were appointed to hold office for a year and a half, or until their successors should be elected and qualified.

The Constitution required the Legislature to provide for the election by the people or appointment by the Governor of all State and county officers not otherwise provided for by the Constitution. Sec. 27, Art. III, Const.

The Constitution does not otherwise provide for the selection of Port Commissioners. Port Commissioners of

Broward County Port District are State officers within the meaning of the Constitution above quoted.

An examination of Chapter 17506, *supra,* clearly shows that the Broward County Port District is an administrative agency requiring the exercise of sovereign governmental powers, and such powers may be exercised only by officers duly commissioned for that purpose. See Dade County v. State, 95 Fla. 465, 116 South. Rep. 72; Kühn v. Swanson, *supra;* Blitch v. Buchanan, 100 Fla. 1202, 131 South. Rep. 151; Commissioner of Internal Revenue v. Ten Eyck, 76 Fed. Rep. (2d) 515; State v. Jones, 79 Fla. 56, 84 South. Rep. 84.

The Port District is in fact a State agency, the officers for which are required by the Constitution to be either appointed by the Governor or elected by the people.

The claim of the respondents therefore is necessarily that of *de facto* officers and is in no sense superior to the claim of Swanson, Baxter and Ryan, who are in fact in possession of the properties of the Port District by virtue of their selection under Chapter 15107, *supra.*

The contention of relators that the Special Act, Chapter 17509, *supra,* as well as Special Act, Chapter 17506, *supra,* were not constitutionally passed by the Legislature because the requirements of Section 21 of Article III of the Constitution as amended in the year 1928, were not observed is clearly supported by the allegations of the information.

The particulars in which such requirements were not observed in the matter of the passage of Chapter 17509, *supra,* (House Bill No. 915), the Act under which the respondents were appointed by the Governor, are fully set out in the information in the nature of quo warranto. Those particulars relate to the notice required to be given as to the substance of the proposed legislation, the designation of the

locality to be affected, the attaching of a copy of the notice to the bill introduced and the affidavit of proof of publication of the notice and further that the information imparted by Honorable Dwight L. Rogers, Representative from Broward County, to a member of the Port Authority was misleading in a matter of substance relating to the proposed bill. Those allegations were admitted by the demurrer to the information. The allegations were of sufficient substance to affect the validity of the bill's passage and to show that the purpose of the constitutional amendment was not regarded and the attempted legislation was bad. See Board Public Instruction v. Brown, 114 Fla. 711, 154 South Rep. 850.

The demurrer therefore should have been overruled with leave to respondents to answer if they deem it to be necessary, and the constitutional writ heretofore issued continued in force.

BROWN, J., concurs in the conclusion.