Neil Chamelin Director Division of Standards and Training Police Standards and Training Commission Tallahassee
QUESTIONS:
1. If law enforcement training trust fund moneys allocated to the regional councils established by the Division of Standards and Training for training purposes or suballocated to specific training centers by the councils are placed in an interest-bearing account, should interest earned be earmarked for law enforcement training purposes rather than become a part of the general operating funds of the parent institution (vocational/technical center, college, or police department)?
2. If a certified police standards training center has properly expended funds pursuant to a statewide training plan for purchase of personal property in the form of equipment, films, etc., and later the center is decertified by the Police Standards and Training Commission and no longer is authorized to conduct certified programs, does title to such personal property revert to either the Police Standards and Training Commission or regional advisory council for redistribution rather than remain with the decertified training center or its parent agency (a vocational/technical center, college, or police department)?
SUMMARY:
When moneys appropriated to the Division of Police Standards for grants and aids and distribution to local training centers and for the express benefit of such training centers for the purpose of implementing training and educational programs and facilities for law enforcement officers is invested in an interest-bearing account by a regional council established by the division as part of a 15-region plan for disbursement and allocation of such appropriated trust moneys to such training centers, interest earned on such investments should be distributed pro rata to the training centers for whose benefit the funds were received and held by the regional councils. If grant and aid moneys already allocated and disbursed to local training centers are invested by such training centers in interest-bearing accounts or are used to purchase equipment or other personalty for use in such training and educational programs, then interest earned on and property purchased with such grant moneys is the property of the local training centers and may not (absent a controlling statute or grant agreement or contract) be recovered by the division or the regional councils. Your questions appear to be predicated upon the following factual situation. The Division of Standards and Training (hereinafter `division') of the Department of Criminal Law Enforcement (hereinafter `department') is statutorily directed to establish and maintain, with approval of the Police Standards and Training Commission (hereinafter `commission'), an advanced and highly specialized training program for the purpose of training police officers, support personnel, and, on request, state law enforcement agencies in crime prevention. Section943.25(1), F. S. Funds accumulated in the Florida Police Academy Fund as of August 1, 1974, were transferred to the department for the purpose of implementing training programs and training facilities, including the establishment or construction of or improvement to any training facilities on a regional basis. Section 943.25(6), F. S.
It appears that the commission has promulgated a 15-region plan to implement the disbursement of moneys which had accumulated in a fund designed for the Florida Police Academy. The regional plan basically reallocated all of such money, and other moneys, to state and local law enforcement agencies through 15 regional councils to underwrite programs to train and educate law enforcement officers with certain exceptions not material to the instant questions. See AGO 077-59. In carrying out this plan, the regional councils allocate moneys to training centers located within their respective regions. These training centers are established at community colleges, vocational/technical schools, and other private and public institutions. The money is released semiannually on a project-by-project basis. Often such projects require expenditures for tangible personal property.
In 1976 the Legislature established the Law Enforcement Training Trust Fund and appropriated from the fund the moneys necessary for the implementation of the commission's regional plan for the disbursement and reallocation of the accumulated funds in the Florida Police Academy Fund on a regional basis through the regional councils. See s. 1, Item 281, Ch. 76-285, Laws of Florida; also see s. 1, Item 285, Ch. 77-465, Laws of Florida; AGO 077-59. The moneys appropriated by these acts from the Law Enforcement Training Trust Fund are earmarked for the statutorily specified purpose of `grants and aids' for `Special Education and Technical Training,' and may not be used for any other purpose or in any other manner than as specified. See 81A C.J.S. States s. 241; Florida Development Commission v. Dickinson, 229 So.2d 6 (1 D.C.A. Fla., 1969), cert. denied, 237 So.2d 530 (Fla. 1970); Dickinson v. Stone, 251 So.2d 268, 273 (Fla. 1971); AGO's 075-120 and 077-59. Moreover, if there is any doubt as to the lawful existence of a particular power being exercised with respect to public funds, it should not be exercised. See AGO's 075-299 and 075-120; cf. State ex rel. Greenberg v. Florida State Bd. of Dentistry, 297 So.2d 628, 635 (1 D.C.A. Fla., 1974), cert.dismissed, 300 So.2d 900 (Fla. 1974).
According to your letter, some of the money allocated to the regional councils is held in bank accounts by the councils prior to its disbursement. Often, the money for a particular project is disbursed by the council prior to the beginning of the project and is placed in an interest-bearing bank account by the training center. This practice has prompted your inquiry as to whether the interest earned is to be earmarked for law enforcement training purposes or whether it should become a part of the operating funds of the institutions housing the training centers. Essentially, two fact situations are involved in this question — that of interest earned by investments in savings accounts by the regional councils and that of such interest earned on investments by the training centers after disbursement to them.
Chapter 943, F. S., does not appear to provide authority for or limitation upon investments by the division or the regional councils. The regional councils are not, in fact, statutorily provided for in any respect. Although there is general statutory authority for investments of public moneys by state agencies, this authority does not appear to me to extend to the councils. Section215.44, F. S., authorizes investment of funds of a `state agency' by the Board of Administration. A `state agency' is defined to mean `any official, officer, commission, board, authority, council, committee, or department of the executive branch . . . of state government.' Section 215.011, F. S. Since these regional councils are not provided for anywhere in the statutes, nor anywhere made a part of or assigned or transferred to the executive branch of government or any department thereof, it is my opinion that they cannot be considered a part of the executive branch of state government or a `state agency' for purposes of the application of s. 215.44, F. S. Cf., e.g., AGO's 076-185, 075-56, 073-32, and 072-210. See also Crandon v. Hazlett, 26 So.2d 638,642 (Fla. 1946), in part holding that committees appointed by county commissioners to aid them in some advisory capacity, not being authorized by law, had no legal or official status; s. 5(c), Art. II, State Const., providing that the powers and duties of state and county officers shall be fixed by law; and cf. Dade County v. State, 116 So. 72 (Fla. 1928). Pursuant to s. 665.321, F. S., `public corporations, funds and organizations, and municipalities and other public corporations and bodies,' are authorized to invest funds held by them in savings accounts of savings and loan associations. While this provision would authorize investments in savings accounts of such financial institutions by municipalities or by community college districts and other districts, for instance, it would not include within its purview the regional councils as such, whose powers and duties are not prescribed by law. Cf., e.g., AGO's 075-57, 074-214, and 072-26; also cf. Advisory Opinion to Governor, 1 So.2d 636 (Fla. 1941), wherein the members of the State Planning Board, an advisory board created by Ch. 17275, 1935, Laws of Florida, and authorized to expend public funds in the discharge of its statutory duties for the purpose of aiding and proposing to state administrative officers and the Legislature plans for the future development, welfare, and governance of the state, were held to be state officers. In sum, while the department or the division would, in certain circumstances, probably fall within the purview of state statutes, such as Ch. 215, F. S., regulating state agencies, I find no statutory authority for a regional advisory council to manage or invest public funds in its custody or possession in savings accounts or certificates of deposits of commercial banks or federal or state savings and loan associations. Cf. AGO 056-122, stating that the supreme court justices' and circuit judges' retirement fund existing under Ch. 123, F. S. 1955, and required to be deposited in a special fund in the State Treasury to be used for the purpose of paying the retirement compensation then provided for by Ch. 123, F. S., should not be invested in absence of any statute making express provision therefor.
As noted, the moneys in question are specifically appropriated to the division for one purpose and one purpose only — grants and aids
for special education and technical training. As public funds are involved, the purposes for which the money was explicitly appropriated must be strictly construed and limited to those purposes. See AGO's 071-28 and 075-120. Moreover, the money has not been earmarked for the benefit of, or expenses of, the division but has been appropriated to the division for disbursement to local agencies. See AGO 077-59. The division is, therefore, acting as a conduit for the moneys appropriated for the benefit of local agencies. The division is not authorized to use this money for its own purposes or to do anything with the money other than disburse it to the training centers. Attorney General Opinion 077-59. If the devisiion acts solely as a conduit for this money, then the regional councils, in the absence of any statutory direction to the contrary, are also merely conduits of the money. Since the funds are appropriated for grants and disbursement to the local training centers, it appears to me that if they are invested before distribution to the local training centers, lawfully or unlawfully, interest earned on such investments must be distributed pro rata to those training centers for whose benefit the regional councils received and held such grant moneys. The funds are effectively the property of the training centers upon appropriation by the Legislature and distribution to the local agencies, the responsibility of the division (and hence the regional councils) being to distribute it to such local agencies for the purposes for which appropriated. Therefore, it is my conclusion that the division (and the regional councils) holds the funds for the benefit of the local training centers and must assure that the training centers get the full benefit of the funds and that, accordingly, the local training agencies and institutions are proportionally entitled to any interest earned on money allocated for their benefit but invested by the regional councils before distribution to such local agencies or institutions.
You next inquire whether interest on the appropriated funds, after allocation to the training centers, upon investment by a local training center itself, must be turned over to the division (or regional council) or whether such earnings may be kept by the training center and made a part of that institution's operating funds. In this situation, the regional council has already disbursed the grant funds appropriated to the division by the Legislature for the benefit of the local training center. If these funds are then invested by the training center, interest earned thereon must surely remain the property of the training center for whose benefit the funds originally were appropriated and allocated or suballocated. Certainly, earnings must (or at least should) be used by the local training centers for law enforcement education and technical training purposes as explicitly provided for in the appropriation acts. However, the grant and aid moneys, once disbursed, have left the control of the division and regional council and are the property of the training center. Similarly, if such money is used to purchase equipment and other personal property for use in training and educational programs, then such property also is owned by the center.
Finally, I find no statutory provision or rule of law requiring that interest earned on or property purchased with the grant and aid moneys appropriated and allocated or disbursed to a local training center may be recoupled by the division or regional council in the event of decertification. Moreover, there does not appear to be either a contract or grant agreement which might govern the occurrence of either failure to use the funds for their intended purpose or decertification. Hence, it is my opinion that title passes to the local training center on allocation or disbursement of the funds thereto. Any interest earned on or property purchased with the funds is owned by the local training center and may not be recovered by the division or regional councils.
Prepared by: Frank A. Vickery, Assistant Attorney General