STATE OF MISSOURI at the Relation of JAMES F. PICKETT, Relator, v. HARRY F. TRUMAN, Presiding Judge of the County Court of Jackson County.—64 S. W. (2d) 105.

Court en Banc, October 19, 1933.*

*NOTE: Opinion filed at May Term, 1933, August 23, 1933; motion for rehearing filed; motion overruled at September Term, October 19, 1933.

*Foristell, Mudd, Blair & Habenicht, Farrington & Curtis* and *Casey & Wright* for relator.

1020

*Fred A. Boxley* and *Rufus Burrus* for respondent.

ATWOOD, J.—By an instrument in writing dated October 20, 1931, and duly approved by the County Court of Jackson County, Missouri, the collector of revenue for said county did "employ James F. Pickett of Jackson County, Missouri, as attorney to institute and prosecute all suits for the collection of taxes which are now and shall become delinquent during his present term of office against land or real property located in Range 33, Jackson County, Missouri, said James F. Pickett as such attorney, to receive as compensation for his services ten per cent (10%) of the amount of taxes actually collected and paid into the treasury on suits instituted by him, and an additional sum of Three ($3.00) Dollars for each suit instituted for the collection of such tax where publication is not necessary, and Five ($5.00) Dollars for each suit where publication is necessary."

More than a year thereafter, to-wit, on the 13th day of January, 1933, Mr. Pickett, conceiving that he was a public officer, filed petition herein for our writ of mandamus to compel the presiding judge of the county court of said county to administer to him the oath of office prescribed by Section 6 of Article XIV of the Constitution of Missouri, at the same time filing stipulation signed by him and counsel for said presiding judge waiving the issuance and service of the alternative writ, fixing time for filing respondent's return and relator's motion for judgment on the pleadings, fixing time for filing abstract of the record and briefs, and waiving oral arguments, relator's obvious purpose being to obtain an early decision from this court holding that he is a public officer. The stipulation was complied with and the case has quite recently come to this writer on reassignment.

In his return respondent admitted that he was the presiding judge of said county court; that by said instrument in writing relator was appointed delinquent tax attorney by virtue of Section 9952, Revised Statutes 1929, as alleged, and that said county court by an order entered of record approved the appointment so made; that an attorney so appointed "is authorized and empowered to institute suits in courts of competent jurisdiction in the county where real estate is situated for the collection of real estate tax and for the enforcement of the State's lien in the collection of said tax;" that "by virtue of Article 14, Section 6, of the Constitution of the State of Missouri, all officers are required to subscribe to an oath of office to support the Constitution of the United States and of this State;" that relator has requested respondent to administer such oath to him and respondent has refused to do so. In his return respondent also denied that relator was an officer within the meaning of the Constitution and laws of this State, and alleged that for that reason he refused to administer the oath of office to relator.

Numerous criteria, such as (1) the giving of a bond for faithful performance of the service required, (2) definite duties imposed by law involving the exercise of some portion of the sovereign power, (3) continuing and permanent nature of the duties enjoined, and (4) right of successor to the powers, duties and emoluments, have been resorted to in determining whether a person is an officer, although no single one is in every case conclusive. [46 C. J., p. 928, sec. 19, n. 1; 53 A. L. R., p. 595.] It is the duty of his office and the nature of the duty that makes one an officer and not the extent of the authority (Mechem on Public Officers, p. 7, sec. 9; Throop on Public Officers, pp. 2, 3, sec. 2), although designation by the law has some significance. [46 C. J., p. 931, sec. 24; State ex rel. v. Gray, 91 Mo. App. 438, 445; State ex rel. Cannon v. May, 106 Mo. 488, 505, 17 S. W. 660; State ex rel. v. Shannon, 133 Mo. 139, 164,

33 S. W. 1137; Gracey v. St. Louis, 213 Mo. 384, 393, 394, 111 S. W. 1159.]

In Mechem on Public Officers, pages 1 and 2, section 1, it is said: "A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer." We have approved this definition in State ex rel. v. Bus, 135 Mo. 325, 331, 332, 36 S. W. 636; State ex rel. v. Hackmann, 254 S. W. 53, 55, 300 Mo. 59; and Hasting v. Jasper County, 282 S. W. 700, 701, 314 Mo. 144, and it appears to be in harmony with the great weight of authority. [State ex rel. v. Bond (W. Va.), 118 S. E. 276, 278, 279; State ex rel. v. Board of Commissioners (Ohio), 115 N. E. 919, 920; Bunn et al. v. People ex rel., 45 Ill. 397, 409.] The Ohio decision states that it is no longer an open question in that state that to constitute a public office "it is essential that certain independent public duties a part of the sovereignty of the State, should be appointed to it by law." Illustrative of what is meant by "sovereignty of the State," in the same opinion it is said: "If specific statutory and independent duties are imposed upon an appointee in relation to the exercise of the police powers of the State, if the appointee is invested with independent power in the disposition of public property or with power to incur financial obligations upon the part of the county or State, if he is empowered to act in those multitudinous cases involving business or political dealings between individuals and the public, wherein the latter must necessarily act through an official agency, then such functions are a part of the sovereignty of the State."

With the foregoing principles in mind we now turn to certain statutes cited and relied upon by relator. Pertinent provisions of Section 9952, Revised Statutes 1929, providing for the employment or appointment of attorneys by collectors in their enforcement of the payment of taxes appearing in the back tax books against real estate are as follows:

"If, on the first day of January of any year, any of said lands or town lots contained in said 'back tax book' remain unredeemed, it shall be the duty of the collector to proceed to enforce the payment of the taxes charged against such tract or lot, by suit in a court of competent jurisdiction of the county where the real estate is situated, which said court shall have jurisdiction, without regard to the amount sued on, to enforce the lien of the state or such cities; and for the purpose of collecting such tax and prosecuting suits for taxes under this article, the collector shall have power, with the approval of the county court, or in such cities, the mayor thereof, to employ such attorneys as he may deem necessary, who shall receive

as fees such sum, not to exceed ten per cent of the amount of taxes actually collected and paid into the treasury, and an additional sum not to exceed $3.00 for each suit instituted for the collection of such taxes, where publication is not necessary, and not to exceed $5.00 for each suit where publication is necessary, as may be agreed upon in writing, and approved by the county court, or in such cities, the mayor thereof, before such services are rendered, which sum shall be taxed as costs in the suit and collected as other costs, and no such attorney shall receive any fee or compensation for such services except as in this section provided;'' etc.

(In the latter part of this section is a proviso relating to cities of thirty thousand or more inhabitants wherein such attorney is referred to as "appointed" by the collector, while earlier in the section the word "employ" was used. We think no distinction in meaning was intended. Both terms convey the idea of selecting and intrusting with a duty. See Gracey v. St. Louis, 213 Mo. 384, 394, 395, 111 S. W. 1159.)

Sections 9945 and 9949, Revised Statutes 1929, cited by relator, provide when delinquent taxes against real estate shall be placed on the "back tax book" and how such real estate may be redeemed. Sections 9953, 9957 and 9956, Revised Statutes 1929, cited by relator, provide how suits commenced by collectors to enforce the payment of such taxes shall be prosecuted, when triable, and form of judgment rendered and execution issued thereon if against defendants.

It will be observed that in none of the above statutes is such attorney denominated an officer or his position an office, as was the case in Hasting v. Jasper County, 282 S. W. 700, 701, 314 Mo. 144, cited and relied on by relator. Furthermore, in the Hasting case, which was an action by a probation officer for his salary. it appears that the statute authorizing his appointment (Sec. 2599, R. S. 1919) vested in him "all the power and authority of sheriffs to make arrests and perform other duties incident to their office," and the authority and duty so conferred upon him by law clearly vested in him "some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public." Also. Sections 9883, 11505, 11535 and 11651, Revised Statutes 1929, cited by relator and concerning the county collector, sheriff. recorder,. and clerk of Supreme Court, respectively, designate such persons as officers or the positions they fill as offices and in the same or other statutes each of such persons is required to give bond for the faithful performance of his duties.

In State ex rel. v. Bus, 135 Mo. 325, 332, 36 S. W. 636, cited and relied upon by relator. the statutes prescribing the manner of appointment and qualification of deputy sheriffs expressly required the oath of office to be indorsed on the appointment, and also stated that they "shall possess all the powers and may perform any of the

duties to be performed by the sheriff," thus clearly evidencing that they, too, were "invested with some portion of the sovereign functions of the government." Relator also cites and relies upon State ex rel. v. Hackmann, 259 S. W. 53, 54, 300 Mo. 59. It will be noted that the opinion in that case did not receive the full concurrence of a majority of the court, and it appears from the separate opinion of Judge GRAVES, who concurred only in the result reached, that the decision rode off on the proposition that "the statute recognizes such an office under the State Board of Equalization, and fills that office."

In fact, none of the statutes relating to the attorney so employed or appointed by the collector invest him with any of the usual *indicia* of an office. They do not require the giving of a bond, they provide for no salary or fixed term of service, and it is evident that the emolument of a successor is dependent upon the execution of a new contract by the collector. Nor does such attorney in the discharge of his duties exercise any of the sovereign functions of the government. He has no public duties independent of the collector's duty to enforce payment of taxes, and for the faithful performance of this duty the collector alone is responsible to the State. In the language of Section 9952, supra, "it shall be the duty of the collector to proceed to enforce the payment of the taxes charged against such tract or lot, by a suit in a court of competent jurisdiction . . . and for the purpose of collecting such tax and prosecuting suits for taxes under this article, the collector shall have power . . . to employ such attorneys as he may deem necessary," etc. This and other sections provide how these suits shall be commenced and prosecuted and judgments rendered therein enforced, but there is no mention of independent public duties of the attorney so appointed. The suits are commenced and prosecuted at the relation of the collector who is the sole agent and representative of the State in the collection of taxes and to whom alone this function of government is intrusted.

It has been suggested that relator is intrusted by legal authority with the receipt of public money and that such function is a part of sovereignty. But there is no provision of law that any part of the taxes so collected shall pass through his hands. Indeed, the language of the statute indicates the contrary, for no part of his compensation comes out of the taxes collected. All of these are paid into the treasury. The attorney's right to fees does not accrue with the rendering of each act of service in a given case, but accrues as a whole after collection made or judgment rendered, State ex rel. McKittrick v. Bair, Collector, 333 Mo. 1, 63 S. W. (2d) 64, and is taxed as other costs in the case. His duties do not extend beyond those of an attorney employed to prosecute a particular class of suits according to the forms prescribed by law for such litigation. If in the course of collection any taxes should be paid into his hands they

might lawfully be received by virtue of the fact that he is the agent and attorney of record of the collector (Carroll County v. Cheatham et al., 48 Mo. 385), but not otherwise. The fact that in such suits the State is the real party in interest (Chilton v. Pemiscot County, 330 Mo. 468, 50 S. W. (2d) 645, 647; State ex rel. Kerstner v. Sanford, 127 Mo. 368, 371, 30 S. W. 112) does not alter the status of the collector as the sole agent of the State in the enforcement of the payment of taxes, or suggest that his attorney is an independent agent of the State invested with governmental functions. The clear implication of the statute providing for the appointment of such attorney is to the contrary. A person so engaged is an employee and not a public officer, and it matters not that such employment is under the direction of or in aid of the performance of some duties intrusted to one who is a public officer. [State Tax Commission v. Harrington, 126 Md. 157, 164, 94 Atl. 537; Adams v. Murphy, 165 Fed. 304, 91 C. C. A. 272; State ex rel. Seymour v. Gilfillan, 15 Ohio Dec. 756; Fisher v. Mechanicville, 225 N. Y. 210, 121 N. E. 764.]

The instant case is readily distinguishable from cases involving the above-mentioned principle of the exercise of sovereignty growing out of the handling of public funds announced in 46 Corpus Juris, pages 928, 929, note 6 (b), such as Commonwealth v. Evans, 74 Pa. St. 124; State ex rel. Swearingen v. Jones, 79 Fla. 56, 84 So. 84; and Dade County v. State (Fla.), 116 So. 72.

In the Pennsylvania case under a legislative resolution Evans was appointed by the Governor who issued and delivered to him an official commission under the great seal of the State. In like manner the Governor required of Evans a bond with two sureties running to the commonwealth and conditioned that the "above bounden George O. Evans, special agent as aforesaid, shall fully perform his official duties under said joint resolution." As stated in the opinion, "he certainly had official duties under the joint resolution, as his bond acknowledged, which, when he accepted the position, he was bound to perform with fidelity." Under this resolution and appointment Evans was the *sole* agent of the commonwealth authorized to collect these claims. As suggested in the opinion, his position was quite analogous to that of a collector of public taxes. Consequently, there is no analogy between the position occupied by Evans and that of an attorney appointed by a collector of public taxes to bring suits for him. Our statutes clearly indicate that the county collector is the *sole* agency of the State in *collecting* the taxes. He would be liable on his official bond for any dereliction or malfeasance therein even by his attorney. It is true that prefatory to a discussion of the above matters in the opinion in the Evans case the court thus defined public officers: "But we are of the opinion that all persons who, by authority of law, are intrusted with the receipt of public moneys, through whose hands money due to the public, or

belonging to it, passes on its way to the public treasury, must be so considered, by whatever name or title they may be designated in the law authorizing their appointment, and whether the service be special or general, transient or permanent." However, the court's decision on this phase of the case, in the light of all the duties imposed upon Evans, is set forth on page 141 in the following language: "We think, therefore, that the moneys collected by Evans were moneys collected by a public officer within the exception of the Act of 1842, and the learned judge below ought so to have instructed the jury, and not that the defendant was entitled to a verdict in his favor on the second count of the declaration." The first statement, taken literally, is much broader than the facts ruled and the court's actual decision thereon, and is by no means persuasive. This general statement in the Evans case is referred to in the Swearingen case. However, that case was ruled upon facts showing that the parties were by statute expressly invested with governmental powers, and the same situation appears in the Dade County case.

It is also urged that in Walker v. Mills, 210 Mo. 684, 689, 109 S. W. 44, 45, and in King v. Maries County, 297 Mo. 488, 498, 249 S. W. 418, 420, we have treated delinquent tax attorneys as public officers. We do not so understand these decisions. When carefully read and considered they weaken rather than aid relator's contention.

Finally, as might well have been observed in the beginning, the long and as far as we know unvaried interpretation of the statute (Sec. 9952, R. S. 1929) as providing for the appointment of an employee and not an officer of the State is entitled to some weight and should not be departed from except for cogent reasons. [59 C. J., pp. 1027, 1028, notes 45, 48 and 49: Williams v. Williams, 30 S. W. (2d) 69, 71, 325 Mo. 963: Huntsville Trust Co. v. Noel, 12 S. W. (2d) 751, 754, 321 Mo. 749; Lefman v. Schuler, 317 Mo. 671, 684, 296 S. W. 808.] For more than fifty years this law has been on the statute books in substantially its present form with respect to appointment of delinquent tax attorneys (Sec. 6836, R. S. 1879), and it remained for relator many months after his appointment to be the first to conceive and present the idea that such an appointee is a public officer. However, as above indicated, we find no cogent reasons to support this view, and it is a significant fact that diligent counsel on both sides have not presented a case in any jurisdiction where the exact question has even been raised.

On July 24, 1933, relator herein filed motion to dismiss this proceeding on the ground that "the 57th General Assembly of the State of Missouri passed a law (Senate Bill 94) which repealed Section 9952, Revised Statutes 1929, and abolishes the office of back tax attorney making the question involved in this case a moot question." The motion is evidently drawn on the theory that this law became effective on the day the motion was filed. Several days prior thereto

an opinion written on the original assignment directing the issuance of our peremptory writ of mandamus was submitted to the court in banc and rejected. The effect of this action of the court was a decision that our peremptory writ should be denied and this opinion, written on reassignment, undertakes to state the reasons therefor.

Black's Law Dictionary defines a moot case as "one which seeks to determine an abstract question which does not arise upon existing facts or rights." It may be that even if relator's appointment had made him a public officer he could not now be sworn in as such. However, the single question presented and submitted here is whether his appointment made him a public officer, and we are by no means convinced that this question is moot. Relator alleged in his petition that "this matter affects every county in this State and is of general public interest to the taxpaying citizens of the State and affects the legality of the official acts of the back tax attorneys of the several counties in this State," and he is estopped to say that the question is moot merely because the law authorizing his appointment is now repealed. It is a matter of vital interest to the citizens of his and other counties and municipalities as well as to him and other delinquent tax attorneys to be advised whether their appointments made them public officers. Even if relator could now be said to have no interest in the legality of his acts performed under this appointment, nevertheless, the single question originally raised and submitted still obtrudes itself upon the existing facts and is of such public importance as to call for a decision of the case upon its merits. [State ex rel. Jones v. Wurdeman, 309 Mo. 408, 415, 274 S. W. 407.] The motion to dismiss is overruled.

For the reasons above stated our peremptory writ in mandamus is denied. *Gantt, C. J.,* and *Frank* and *Hays, JJ.,* concur; *Leedy, J.,* dissents in a separate opinion; *Tipton* and *Ellison, JJ.,* dissent and concur in separate opinion of *Leedy, J.*

LEEDY, J. (dissenting).—It is not without reluctance that I am unable to concur in the majority opinion, but deeming the result there reached as not sustained by the cited previous decisions of this court, nor on an analysis of general principles of law applicable to the facts of the case, I shall, as briefly as possible, state the grounds of my dissent.

The books are replete with definitions of the terms "officer" and "public office," and the adjudicated cases illustrate the wide range taken in their application. It is perfectly apparent that employment and agency are distinguishable from public office, but the line of demarcation between them is sometimes difficult of perception. As aptly expressed by the writer of the opinion in State ex rel. v. Jennings, 57 Ohio St. 415, 49 N. E. 404, "It is easier to conceive the general requirements of such an office, than to express them with

precision in a definition which shall be entirely faultless." However, the rule heretofore adopted by this court by which the status of a questioned functionary may be determined as that of an employee or officer is correctly stated in the majority opinion and my dissent arising from what I conceive to be a misapplication of that rule under the facts in the case at bar.

In State v. Valle, 41 Mo. 30, it was held that if an officer receives his authority from the law, and discharges some of the functions of government, he will be a public officer. In the case of State ex rel. v. Bus, 135 Mo. 325, 36 S. W. 636, which was a proceeding in *quo warranto* to oust respondent from the office of school director on the ground that by his subsequent acceptance of the position of deputy sheriff, the office of director became vacant, this court, speaking through MACFARLANE, J., held: "A public office is defined to be 'the right, authority, and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.' [Mechem, Pub. Offices, 1.] The individual who is invested with the authority and is required to perform the duties is a public officer.

"The courts have undertaken to give definitions in many cases, and while these have been controlled more or less by laws of the particular jurisdictions, and the powers conferred and duties enjoined thereunder, still all agree substantially that if an officer receives his authority from the law and discharges some of the functions of government he will be a public officer. [State v. Valle, 41 Mo. 30; People ex rel. v. Langdon, 40 Mich. 673; Rowland v. Mayor, 83 N. Y. 376; State ex rel. v. May, 106 Mo. 488.]

"Deputy sheriffs are appointed by the sheriff, subject to the approval of the judge of the circuit courts; they are required to take the oath of office, which is to be indorsed upon the appointment and filed in the office of the clerk of the circuit court. After appointment and qualification they 'shall possess all the powers and may perform any of the duties prescribed by law to be performed by the sheriff.' [R. S. 1889, secs. 8181 and 8182.]

"The right, authority, and duty are thus created by statute; he is invested with some portions of the sovereign functions of the government to be exercised for the benefit of the public, and is, consequently, a public officer within any definition given by the courts or text writers. . . . The power of appointment comes from the State; the authority is derived from the law; and the duties are exercised for the benefit of the public. . . . Whether a public employment constitutes the employee a public officer depends upon the source of the powers and the character of the duties. . . ."

That doctrine has been expressly approved by this court in the

following cases: State ex inf. v. Whittle, 333 Mo. 705, 63 S. W. (2d) 100, concurrently decided herewith; State ex rel. v. Harter et al., 188 Mo. 516, 87 S. W. 941; Gracey v. St. Louis, 213 Mo. 384, 111 S. W. 1159; State ex rel. v. Hamilton et al., 240 S. W. 445; State ex rel. Zevely v. Hackmann, State Auditor, 300 Mo. 59, 254 S. W. 53, and Hastings v. Jasper County, 314 Mo. 144, 282 S. W. 700. The latter case involved the question as to whether a probation officer appointed under Chapter 21, Article VI, Revised Statutes 1919, was a public officer. An examination of that statute discloses that the person appointed under its provisions was not, by the terms of such statute, either required to give bond, or take an oath, but on the authority of State ex rel. v. Bus, supra, and cases there cited, such appointee was held to be a public officer.

The most general distinction of a public office is pointed out in Mechem Public Officers, section 4, as follows: "The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involve a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches for the time being, to be exercised for the public benefit."

The character of a position, as official or unofficial, is not to be determined by its importance or dignity, nor by the *quantum* or extent of authority conferred thereunder. It is stated in Throop on Public Officers, page 2, paragraph 2, "And he is not the less a public officer where his authority is confined to narrow limits, because it is the duty of his office and the nature of that duty which makes him a public officer, and not the extent of his authority." And to the same effect was the holding of the Kansas City Court of Appeals, in State ex rel. v. Gray, 91 Mo. App. 438, l. c. 443, in an opinion by ELLISON, J., as follows: "However, the generality of the definition of a public office and the difficulty of distinguishing in many cases between a mere employment and an officer, has led to much litigation on the question. The fact that a position in the public service may be inconsequential and its honor not much sought, does not prevent its being a public office. Thus, a deputy constable is a public officer, for to him is granted a portion of important sovereign power of the executive branch. So is a school director for he may, among other things, levy taxes."

That notaries public are public officers, the authorities are all in accord. [20 R. C. L. p. 326, par. 2; Wilson v. Kimmel, 109 Mo. 260, 19 S. W. 24.] And so it has been held by this court that a ward or township committeeman of a political party is a county officer (State ex rel. v. Hamilton, 240 S. W. 445, l. c. 448), and that while his

official duties pertain only to the management of party affairs, still they affect the welfare of the entire community, and he exercises some of the functions of government (State ex rel. v. Falkenhainer, Judge, 321 Mo. 1042, 15 S. W. (2d) 342), that the superintendent of streets, by appointment of the Mayor of Kansas City, subject to the confirmation of the common council, is an officer, and not a mere employee of the city (State ex rel. v. May, 106 Mo. 488, 17 S. W. 660); and that a deputy elevator inspector appointed under the ordinances of the city of St. Louis is a public officer (Gracey v. St. Louis, 213 Mo. 384, 111 S. W. 1159).

In the case of Gracey v. St. Louis, supra, it was held that plaintiff, a deputy elevator inspector, was a public officer, notwithstanding the ordinances under which he was acting provided that the inspector was "authorized to *employ*, by and with the consent of the mayor, five deputy inspectors." Judge LAMM, speaking for this court, in disposing of the contention that plaintiff was a mere employee, said: "It appears, then, that whether our conclusion be drawn from a view of general principles of law, or (more narrowly) be based on a close analysis of the ordinances of defendant city, we must hold plaintiff was an officer of the city of St. Louis. And this although the word 'employ' is used in Section 2197. *The word is of wide meaning, and taken with its context, conveys the idea of selecting and intrusting with a duty.*" [l. c. 394—Italics ours.]

Under the decisions and the general principles applicable to the question, it is clear an attorney would not be a public officer merely because he had been appointed or employed by some public official under authority of law to represent the latter in the discharge of his official duties, and even to bring suits according to prescribed rules of law. As illustrative of such rule, the following are cases in point:

In Adams v. Murphy, 165 Fed. 304, 91 C. C. A. 272, an act of the National Council of the Creek Nation authorized the principal chief "to contract with, retain and employ an attorney at law, or firm of attorneys at law," to represent the Nation and its members, and provided that the contract should be subject to cancellation on thirty days' notice for good cause shown. The Circuit Court of Appeals for the Eighth District said: "It seems to us that both the statute and contract leave little room for doubt on this point. The statute authorizes the principal chief 'to contract with, retain and employ an attorney at law or firm of attorneys at law.' This is wholly incompatible with the idea of office. A firm of attorneys could not hold an office. The statute also provides that the contract shall be subject to cancellation. If it had contemplated the employment as giving rights to an office, it would have made provision for the removal of the occupant from office. The statute simply conferred authority upon the principal chief to make the

contract. It did not direct him to appoint an officer, and the person whom he employed derived his rights from the contract and not from the statute.''

In State ex rel. Seymour v. Gilfillan, 15 Ohio Dec. 756, a statute authorized the several county courts of Ohio to appoint a ''tax inquisitor'' whose duty it should be ''to make inquiry and furnish the auditor the facts as to any omissions of property for taxation and the evidence necessary to authorize him to subject to taxation any property properly omitted from the tax duplicate.'' He was paid a percentum on taxes collected which had been improperly omitted from the tax list, as might be agreed with the county commissioners. The court said: ''He is an employee. He is an aid to the taxing officer. His duties arise out of contract; and his employment is dependent for its duration, its extent and character upon the terms of the contract, and is for a definite and particular purpose.''

In Fisher v. City of Mechanicville, 225 N. Y. 210, 121 N. E. 764, the act incorporating the defendant village provided with regard to a village attorney: ''It shall be the duty of the board and it shall have the power and authority. . . . to appoint annually an attorney and pay such attorney a reasonable annual salary.'' The plaintiff was appointed city attorney by the village board for one year at a salary of $750. A few months thereafter the village was incorporated as a city, thereby terminating all public offices under the village charter. The plaintiff sued for his salary claiming he was not a public officer but an employee and was entitled to his salary under his contract of employment. The New York Court of Appeals said: ''The act incorporating the village contains a list of village officers, and the village attorney is not named therein. No provision is made in the act requiring the village attorney to take an oath of office. Neither is there any provision specifying the duties which the village attorney shall perform, and the fact is found that he does not perform any governmental duties. I think, therefore, that the plaintiff as village attorney was not a public officer but rather that he was an employee of the village.''

There is also another line of cases, which I think are here applicable, holding that those persons who by authority of law are entrusted with the receipt of public moneys, or through whose hands money due to the public, or belonging to it, passes on its way to the public treasury are public officers. In Commonwealth v. Evans, 74 Pa. St. 124, the Legislature of Pennsylvania, conceiving there might be due that state from the United States ''various amounts for disbursements made during the rebellion'' adopted a joint resolution authorizing the Governor ''to appoint a special agent to collect the disallowed and suspended claims of the state against the United States, whose compensation for that purpose shall not exceed ten per centum

of the amounts thus collected, and shall be paid out of such collections." The Governor appointed the defendant, who made certain collections. Having failed to pay them into the treasury, the state sued him therefor, in one count charging the money had been collected by the defendant in his professional capacity as attorney in fact and agent; in a second count alleging the money had been received by him as a public officer; and in a third count on an account stated. The statute of Pennsylvania abolishing imprisonment for debt excluded from relief persons receiving money as officers or in any professional employment. The defendant contended he was not engaged in either of these capacities, but merely as a "special agent." The Supreme Court of Pennsylvania held he was a public officer, saying: "But we are of the opinion that all persons who, by authority of law, are entrusted with the receipt of public moneys, through whose hands money due to the public, or belonging to it, passes on its way to the public treasury, must be so considered, by whatever name or title they may be designated in the law authorizing that appointment, and whether the service be special or general, transient or permanent."

In State ex. rel. Swearingen v. Jones, 79 Fla. 56, 84 So. 84, the Legislature of Florida created a commission to be known as the Florida Purchase Centennial Commission, to be composed of five designated persons. The commission was authorized to act for the State in asking for, receiving and handling Federal appropriations for an exposition and in other ways to receive, handle and disburse money. Citing and quoting the above definition of a public officer appearing in the Evans case from Pennsylvania, the Supreme Court of Florida held the members of the commission were public officers. And since they had been nominated in the act, whereas the Constitution of Florida provided that all state and county officers should be elected by the people or appointed by the Governor, it was held the whole act was unconstitutional and void.

The same doctrine was applied in a later Florida case. In Dade County v. State, 116 So. 72, the Legislature had passed a law creating a commission composed of specified persons to build a sea wall or otherwise protect the ocean front of Dade County in the city of Miami Beach. The act authorized the commission to receive, handle and disburse money. On authority of the Jones case just summarized, and the Evans case from Pennsylvania, and following the definition of a public officer given in those cases, the act was declared unconstitutional because the Legislature had named the members of the commission instead of providing for their appointment by the Governor or election by the people.

It will be observed that the statute (Sec. 9952, R. S. 1929, Sec. 9952, Mo. Stat. Ann. p. 7993) provides that for the purpose of collecting delinquent taxes *and* prosecuting suits, the collector shall

have power to employ attorneys. The authority of the attorneys is not limited to the prosecution of the suits but extends to the collection of the taxes. They are to receive ten per cent of the amount of taxes actually collected and an additional sum where suit is brought. The concluding provision of the act, applicable to cities of 30,000 or more inhabitants says an attorney or attorneys shall be appointed "for the purpose of prosecuting suits for taxes." It does not say for the collection of taxes. But in fixing the compensation it provides the attorney shall be entitled to a fee not exceeding a specified maximum, as may be agreed upon, "after judgment is obtained, collected and paid into the treasury." On taxes paid before judgment "the attorney collecting the same" receives not exceeding two per cent.

It is, furthermore, well known that the general practice in Missouri under the statute for years has been that tax attorneys collect back taxes just as they would accounts for private clients—without suit, if possible. And would it be said that in such instances if the tax attorney should appropriate the money to his own use he could not be prosecuted for embezzlement of public funds under Section 4086, Revised Statutes 1929?

Since the part of the statute applicable to counties, at least, provides for the employment of attorneys for the purpose of collecting taxes and specially fixes a compensation for that service, it seems to me we are bound to say these attorneys are authorized to receive and pay over the money they collect. The word "collection" ordinarily has a broader meaning than merely to enforce payment of an amount due. [Words and Phrases, First, Second and Third Series; State ex rel. v. Moeller, 48 Mo. 331.]

Indeed, if the statute had not provided tax attorneys for counties should be employed "for the purpose of collecting" taxes, and their express authority had extended only to the prosecution of suits for taxes (as is the case with the attorneys for cities mentioned in the concluding proviso of Sec. 9952) they would still be authorized by law to collect and receive the money sued for. In Carroll County v. Cheatham, 48 Mo. 385, the following is held, quoting from the head note, which correctly reflects the ruling of the opinion: "In suit by a county for the collection of money, payment may be made by defendant to the lawfully authorized agent and attorney of the county, without proof of any special authority conferred upon the attorney to institute the suit. He was warranted in receiving the money sued for as in other cases."

The suit in that case was for money which had been loaned out of the county school fund, and the opinion says the conclusion it reaches is not in anywise affected by the fact that the statute covering the handling of that fund (R. S. Mo. 1855, ch. 143, art. II, sec. 25) provided "the principal and interest on all loans shall be paid into the county treasury of the county in which the loan is made;

and when any money shall be so paid, it shall be the duty of the treasurer to give the person making the payment, duplicate receipts therefor."

That a tax attorney is the "lawfully authorized" attorney of the State, or county, rather than of the county collector who appointed him, seems clear to me. As shown in the principal opinion, the real party in interest in tax suits is the State, not the county collector, and if the latter retires from office it is not necessary to substitute his successor as plaintiff. [State ex rel. Kerstner v. Sanford, 127 Mo. 368, 371, 30 S. W. 112.] This being true, tax attorneys are public officers within the definition of the Pennsylvania and Florida cases.

The majority opinion holds that the functions exercised by the back tax attorney are not independent of the duties of the collector with respect to the matter of enforcing the collection of back taxes, and on the authority of State ex rel. v. Board of Commissioners (Ohio), 115 N. E. 919, and similar cases cited, relator is held to be an employee, and not an officer. The opinion in the Ohio case does give prominence to the fact that a public officer is one who exercises, in an independent capacity, a public function in the interest of the people, by virtue of law, which, as pointed out in State ex rel. v. Jennings, 57 Ohio St. 415, 49 N. E. 404, "is only saying in another form, that he exercises a portion of the sovereignty of the people delegated to him by law." In State ex rel. v. Board of Commissioners, supra, the question was as to whether the clerk of the board of county commissioners was an officer, and it was held it was the members of the board who were clothed with the sovereign power of the State, and that the duties of the clerk were incidental thereto, and *purely clerical;* that he was the amanuensis of the board, and it was his duty to record its proceedings; that he had "no police power, no power affecting public obligation, financial or otherwise, *and he does not represent the public in the slightest capacity in any transaction involving it and the individual."* (Italics ours.)

The principal opinion ignores and overlooks what seem to me to be certain attributes of sovereignty of the State which, I think, pass to the back tax attorney under the statutes providing for his appointment and governing the performance of his duties thereunder. The exercise of the power of taxation consists of two distinct processes —the one relating to the levying or imposition of the taxes on persons or property; the other to the collection of the taxes levied. [26 R. C. L., sec. 2, p. 14.] The appointment, or designation of a back tax attorney can be made by the collector only with the consent and approval of the county court, and the compensation he shall receive therefor, called fees, is likewise subject to approval of the county court. Clearly, his authority is derived from the law. The form of actions to be brought, the manner in which the same shall be prose-

cuted, as well as what the petition and accompanying tax bill shall contain are all governed by statute. [Sec. 9953.] The time for bringing such suits, the time in which the same shall be tried, and the nature of the judgment to be rendered are likewise fixed by law. [Secs. 9945, 9949, 9956 and 9957.] Moreover, it has been held that no means can be resorted to, to coerce the payment of taxes, other than those provided by statute. [State ex rel. v. Goodnow, 80 Mo. 271.] And in actions for the recovery of delinquent taxes, the State, and not the collector at whose relation the suit is brought, is the real party in interest. [State ex rel. v. Sanford, 127 Mo. l. c. 371, 30 S. W. 112.]

In consequence of the statutes mentioned it becomes the duty of the attorney to determine what facts must be pleaded to state a cause of action; to determine who are proper and necessary parties; to determine the sufficiency of the back tax bill, as well as its certification; to determine when orders of publication are necessary and the sufficiency of the same when made. These and other duties devolve upon the attorney by force of the statutes respecting the collection of back taxes, and do not arise out of contract.

As above pointed out, the State, and not the collector, is the real party in interest; that the attorney may collect the taxes with or without suit, and give acquittances therefor. Can it be said that in the performance of the duties enumerated above he is not acting for the public? That in so doing he is not acting to a large extent upon his own independent judgment, and not in the performance of ministerial duties devolving upon him through a superior? These questions seem to me to answer themselves. I think for twenty-five years this court has regarded his status as that of an officer; at least such is the plain inference to be drawn from the holding in Walker v. Mills, 210 Mo. 684, 109 S. W. 44. Defendant in that case contended that the back tax attorney, who purchased the lands in suit at a tax sale under a judgment rendered on constructive service, had no right to purchase thereat. It was held, "There are many respectable and forceful cases holding that a public officer whose duty it is to collect taxes cannot purchase at such sale. Such, however, is not the rule in Missouri. [Citing cases.]"

This court, in construing the statutes here under consideration in King v. Maries County, 249 S. W. 418, 297 Mo. 488, held the same to constitute "the scheme of the State, to be pursued by the county officials in the collection of back taxes by suit, or otherwise. Their duties are prescribed, and their compensation is fixed. Duties are imposed upon the county clerk, the county collector, and the attorneys employed by the latter. The county court has a supervisory control in fixing the compensation of the attorney, which must be agreed upon in writing, and cannot exceed the prescribed limit." Furthermore, it is a matter of common knowledge that the authori-

ties charged with the administration of the income tax laws, both Federal and State, have for years accepted and approved returns of back tax attorneys and assessments of such tax have uniformly been made on the basis of their status as officers, so it seems to me that what is said in the principal opinion with respect to the interpretation previously given the statute, and not departing therefrom except for cogent reasons may with equal or greater force be applied in support of relator's contention.

The office is an independent one. Its duties are not devolved upon the occupant by a superior, as ministerial duties may be devolved upon a deputy, but are imposed by the statute. [State ex rel. v. Brennan, 29 N. E. 593.] I think a portion or segment "of the sovereignty of the State filters through the meshes of the statute" and invests the incumbent with the power and duty to exercise such' independent functions as to constitute him a public officer, and so I respectfully lodge my dissent. *Ellison* and *Tipton, JJ.,* concur.