**PICKETT v. UNITED STATES.\***
No. 11229.

Circuit Court of Appeals, Eighth Circuit.
Dec. 27, 1938.

Writ of certiorari denied 59 S.Ct. 587, 83 L.Ed. ⏤.

910

Elmer B. Hodges, of Kansas City, Mo. (Albert F. Hillix and Gage, Hillix, Hodges & Cowherd, all of Kansas City, Mo., on the brief), for appellant.

Paul S. McMahon, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., J. Louis Monarch and Milford S. Zimmerman, Sp. Assts. to the Atty. Gen., and Maurice M. Milligan, U. S. Atty., and Sam C. Blair, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for the United States.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

James F. Pickett, the plaintiff in the court below, is an attorney who was employed by the Collector of the Revenue for Jackson County, Missouri, to collect delinquent taxes. He appeals from a judgment against him holding that the fees received for this work were subject to federal income tax.

It appears that appellant acted as attorney for the Collector of Jackson County during the years 1932 and 1933, pursuant to a written agreement which provided that the collector, "in accordance with and by virtue of Section 9952, R.S.Missouri 1929, as amended [Mo.St.Ann. § 9952, p. 7993] * * *, does hereby employ James F. Pickett * * * as attorney to institute and prosecute all suits for the collection of taxes which are now and shall become delinquent during his present term of office against land or real property located in Range 33, Jackson County, Missouri, said James F. Pickett as such attorney, to receive as compensation for his services 10 per cent (10%) of the amount of taxes actually collected and paid into the treasury on suits instituted by him, and an additional sum of Three ($3.00) Dollars for each suit where publication is necessary."

* * * "Said John R. Ranson, as Collector, deems it necessary to employ said James F. Pickett, as such attorney, and the said James F. Pickett does hereby accept the above employment and agrees to institute and prosecute all of such suits and to perform all services necessary as such attorney for the compensation named aforesaid."

It was agreed in the contract that it might be revoked at any time by the Collector.

Judge Truman, Presiding Judge of the County Court of Jackson County, approved the contract, but refused to administer an oath of office to Mr. Pickett, which was requested on the theory that the contract made him a state officer. Mr. Pickett petitioned for mandamus to the Supreme Court of Missouri to compel Judge Truman to administer the oath of office, but that court, sitting en banc, denied the petition. State ex rel. Pickett v. Truman, 333 Mo. 1018, 64 S.W.2d 105.

At the time the contract was entered into appellant had a law office in a suburban community of Kansas City at some distance from the downtown or business district. The Collector advised him that in order to properly discharge his duties as attorney it would be necessary for him to be more accessible to the general public, and appellant accordingly moved his office to one of the better known downtown office buildings where he shared a suite with some other attorneys. Appellant also observed the Collector's notice that a proper discharge of the duties required the attorney to keep regular office hours so that he would be available to taxpayers without unduly burdening them. The duties did not, however, prevent appellant from continuing his private practice, except as performance of these duties might diminish the time he would have available for such private practice. He did some legal work connected with his former practice and at least one or two suits were filed by a young man in his office in his name. There was no proof that appellant turned away any clients who came to him for advice or professional services.

The routine of appellant's service was described by appellant and the chief clerk in the Collector's office. Their testimony was that the Collector's office prepared the statements of various pieces of property upon which the taxes were delinquent and sent the statements to plaintiff's office.

Plaintiff left blank petitions with the Collector's office which the employees filled in with the names of the property owners and a description of the property and the amount of the taxes, and the employees of the Collector's office took the petitions to the office of the Clerk of the Circuit Court and filed them. The Collector selected the property upon which suit was to be filed. The Collector told plaintiff not to have service issued on these suits, but to send notices to the property owners that their taxes were delinquent and that suit had been filed thereon. The petitions which were filed were upon a printed form. In preparing these, appellant used as his guide an old form theretofore in use, changing it "to meet certain requirements." The Collector would transmit a stack of notices (copied in multiple) to plaintiff to send out to delinquent taxpayers, and plaintiff would have them sent, and at the end of about a month's time he would send the remaining copies of the notices back to the Collector's office. There the employees of that office would check the ones which had been paid and send the remaining ones back for second notices, continuing this procedure until a total of five notices had been sent, three to the property owners and two to the mortgagee. The Collector selected the parties to whom the notices were to be sent, and appellant never sent notices to any one else. The Collector determined the time when suits should be filed. During all the time that plaintiff was employed as delinquent tax attorney no suits were reduced to judgment and no property was sold. Appellant spent a lot of time talking in his office to the people who were delinquent in their taxes.

Appellant stated that the Collector retained control of the procedure followed after suit had been filed, at least as to preparing and selecting the notices to be sent and the time for sending them. No authority was given appellant to abate or settle taxes upon which suit had been filed. Appellant testified that in all of his activities in the institution of the suit, computation of taxes, notices to the taxpayers, and the final disposition of the suit, he was acting at all times under the instruction of the Collector and was subject to his direction and control.

The compensation of an attorney retained to collect delinquent taxes is fixed by the statute of Missouri referred to in the contract at an amount not to exceed 10 per cent of the amount collected, and this amount, when suit is prosecuted to judgment, is to be collected as costs. Appellant testified that he received his compensation from the Collector who made the payments as "he understood, from the general fund." He received some $49,000 for his services in 1932 and some $26,000 in 1933. He did not return these amounts as taxable, although he did in his returns claim as deductions for expenses some $6,000 for 1932 and $2,000 for 1933, representing largely sums paid to individuals in the Collector's office for assistance rendered and for making his work easier and more pleasant. The Income Tax Commissioner assessed the tax against appellant computed on the basis that the amounts of $49,000 and $26,000 received by him constituted taxable income. Appellant paid the taxes under protest and brought this action to recover the alleged wrongful exaction. A jury was waived in the District Court and the Court found, after trial, that in view of the Missouri statute, appellant's work was not that of a mere employee of the Collector, but was that of an attorney. Relying upon the decision of this court in Burnet v. Jones, 8 Cir., 50 F.2d 14, the Court concluded that appellant had not made an overpayment of taxes and judgment of dismissal was entered. Appellant's contention here is that the amounts he earned for legal services to the Collector were tax exempt as compensation paid to an employee of a state official for services rendered in performance of an essential governmental function of the state.

It is not disputed that taxation and the collection of taxes are essential governmental functions. The issue in the present case is as to the nature of plaintiff's participation in the performance of the function. As was said by the Supreme Court in Helvering v. Gerhardt, 304 U.S. 405, loc. cit. 420, 58 S.Ct. 969, loc. cit. 975, 82 L.Ed. 1427, "even though the function be thought important enough to demand immunity from a tax upon the state itself, it is not necessarily protected from a tax which well may be substantially or entirely absorbed by private persons. Metcalf & Eddy v. Mitchell [269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384], Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260." The argument has centered upon the question whether Mr. Pickett's employment by the Collector ought to be distinguished from the employment of those attorneys whose incomes have been held taxable in Helvering v. Therrell, 303 U.S.

218, 58 S.Ct. 539, 82 L.Ed. 758; Burnet v. Jones, 8 Cir., 50 F.2d 14; Burnet v. Mc-Donough, 8 Cir., 46 F.2d 944, and cases therein cited.

The rights and duties of an attorney retained by a Collector to collect back taxes have been defined by the Supreme Court of Missouri. In State ex rel. McKittrick v. Bair, 333 Mo. 1, 63 S.W.2d 64, the Collector resisted as unconstitutional an act remitting the statutory penalty which attached to delinquent taxes and out of which the attorney was to be paid. The court said, page 14, 63 S.W.2d page 65,

"The attorney's fees are provided for by section 9952 of the Revised Statutes of 1929 [Mo.St.Ann. § 9952, p. 7993], which, after providing that the collector shall proceed to enforce the payment of delinquent taxes charged on any lot or tract, by suit to enforce the lien thereon, further provides in substance that for such purpose the collector shall have power, with the approval of the county court, to employ such attorneys as he may deem necessary, who shall receive as fees such sum, not to exceed 10 per cent. of the taxes, actually collected and paid into the treasury, and an additional sum, not to exceed $3 for each suit instituted for the collection of such taxes; which said sum shall be taxed as costs in the suit and collected, as other costs, and no attorney shall receive any fee or compensation for such services except as in this section provided. From the statute itself it is obvious that the attorney's right to fees does not accrue pari passu with the rendering of each act of service in a given case, but accrues as a whole after collection made or judgment rendered. * * * And, contrary to an argument pressed, the Legislature having fixed one definite and certain mode of payment, no other is permissible, and there can be no application of the doctrine of quantum meruit. * * *

"The contract entered into between the collector and his attorney, and approved by the county court, imposes no liability upon either the state, county, or the collector. It only fixes the status of the attorney as to his right to compensation and the amount thereof when in the tax suit the liability therefor becomes fixed upon the taxpayer's property by the final judgment in the case."

As the Missouri court construes the statute, it contemplates the employment, with the approval of the county court, of such number of attorneys as the collector may deem necessary, and that the attorneys so retained must look for their compensation to the funds collected from the taxpayer. The appellant's situation is different from that of an attorney elected or appointed for a fixed term at a definite salary or for compensation payable on a quantum meruit basis.

The nature of the employment was further explained in the mandamus action brought by Mr. Pickett to compel the County Court to administer to him the oath of office which is to be subscribed by a State Officer of Missouri. State ex rel. Pickett v. Truman, supra. In that case the court, after distinguishing Mr. Pickett's position from that of various public officers, said, 64 S.W.2d 107:

"In fact, none of the statutes relating to the attorney so employed or appointed by the collector invest him with any of the usual indicia of an office. They do not require the giving of a bond, they provide for no salary or fixed term of service, and it is evident that the emolument of a successor is dependent upon the execution of a new contract by the collector. Nor does such attorney in the discharge of his duties exercise any of the sovereign functions of the government. He has no public duties independent of the collector's duty to enforce payment of taxes, and for the faithful performance of his duty the collector alone is responsible to the state. * * * [Referring to Sec. 9952, of the R.S.1929, Mo.St.Ann. § 9952, p. 7993.] This and other sections provide how these suits shall be commenced and prosecuted and judgments rendered therein enforced, but there is no mention of independent public duties of the attorney so appointed. The suits are commenced and prosecuted at the relation of the collector who is the sole agent and representative of the state in the collection of taxes and to whom alone this function of government is entrusted. * * *

"The fact that in such suits the state is the real party in interest * * * does not alter the status of the collector as the sole agent of the state in the enforcement of the payment of taxes, or suggest that his attorney is an independent agent of the state invested with governmental functions. The clear implication of the statute providing for the appointment of such attorney is to the contrary. A person so engaged is an employee and not a public officer,

and it matters not that such employment is under the direction of or in aid of the performance of some duties intrusted to one who is a public officer."

Appellant contends that while the decision established that he was not a State officer, it nevertheless established that he was the employee of the Collector, and hence that the income of this employment should not be taxed by the federal government. He stresses elements of his employment which he thinks should justify the conclusion that he was employed as an assistant or mere subordinate to the Collector, rather than as an independent attorney.

In Helvering v. Therrell, 303 U.S. 218, 58 S.Ct. 539, 82 L.Ed. 758, the Supreme Court held that income tax was properly assessed upon the remuneration of legal counsel employed in one case by the Insurance Department of New York, and in the other by the Department of Justice of Pennsylvania, and assigned respectively to serve in liquidating insolvent insurance companies and banks. The court noted that no one of the individuals was an officer of the State in the strict sense of the term, that the business of their employment was "not one utilized by the State in the discharge of her essential governmental duties" and that the compensation of the individuals derived from corporate assets, not funds belonging to the State. In the present case we note that appellant was not an officer of the State, that his compensation did not derive from the State but from a penalty assessed upon the taxpayer as costs, (see Saxe v. Shea, 2 Cir., 98 F.2d 83), and that the service rendered was not necessarily fulfilling an essential governmental operation.

The function of collecting taxes, taken as a whole, is undoubtedly a governmental function and essential, but the services of independent agencies may be utilized. Tax collection systems have historically made use of the independent agency of tax "farmers" who collected taxes as a private business or undertaking, rather than as a state function or under state control. Tax ferrets have been defined as persons "engaged in the business of searching for property omitted from taxation." Simpson v. Silver Bow County, 87 Mont. 83, 285 P. 195, 198. And their activities, when permitted, are usually regarded as private rather than as part of a state agency. Simpson v. Silver Bow County, supra; Murphy v. Swanson, 50 N.D. 788, 198 N.W. 116, 32 A.L.R. 82, note. See also King v. Maries County, 297 Mo. 488, 249 S.W. 418. If appellant's services were private in character, his remuneration was not tax exempt as an instrumentality of state government. Burnet v. McDonough, 8 Cir., 46 F.2d 944; Burnet v. Jones, 8 Cir., 50 F.2d 14.

In Burnet v. McDonough, supra, this court considered the claim of an attorney for an Arkansas Bridge District who received $500 salary and $2,500 fees from the district and claimed this remuneration was exempt from federal income tax. We reviewed the authorities and held that he was not a state officer or employee, but came rather under the classification of independent contractor, and that the fees were taxable. We relied upon Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384, and Lucas v. Howard, 280 U.S. 526, 50 S.Ct. 87, 74 L.Ed. 593, and other cases where attorneys' fees derived from services to a State or subdivision thereof were held not tax exempt. In Roberts v. Commissioner, 44 F.2d 168, the Fifth Circuit Court of Appeals, in a short opinion, disposed of the claim to exemption brought forward by an attorney who was employed under contracts with the State Tax Commissioner of Georgia and with boards of county commissioners to collect delinquent state and county taxes. In Lucas v. Reed, 281 U.S. 699, 50 S.Ct. 352, 74 L.Ed. 1125, the Supreme Court reversed, per curiam, a decision of the Court of Appeals, Reed v. Commissioner, 3 Cir., 34 F.2d 263, holding that income received by an attorney for services as special counsel in representing the commonwealth in collecting state inheritance taxes was not subject to the federal income tax. In Blair v. Byers, 8 Cir., 35 F.2d 326, this court held that the attorney for the water works for the City of Des Moines was not a municipal employee. These cases are obviously in point upon the present situation. In Burnet v. Jones, 8 Cir., 50 F.2d 14, we relied upon the McDonough Case in holding that the salary income of an attorney for a drainage district was taxable. Other cases illustrate the established principle.[1]

1 Saxe v. Shea, 2 Cir., 98 F.2d 83; Ewart v. Commissioner, 3 Cir., 98 F.2d 649; Childers v. Commissioner, 9 Cir., 80 F.2d 27; Buckner v. Commissioner, 2 Cir., 77 F.2d 297; Register v. Commissioner, 5 Cir., 69 F.2d 607, 93 A.L.R. 186.

The appellant attempts to distinguish his case by showing that he was so much under the control of the Collector that no independent action was left to him, and that his work was not typically legal. We think the fact that appellant moved his office and kept regular office hours at the suggestion of the Collector did not reflect control by the Collector over appellant. Those were requirements which any attorney who wanted the contract to collect the taxes must conform to, and appellant chose to conform. None of the so called "control" which the Collector reserved was incompatible with the existence of the relation of a responsible official client towards his attorney employed for a particular and limited legal service.

The statute authorizing appellant's fees certainly contemplated legal services, and he is bound thereby. While the statute and cases construing it speak of "employment" and "appointment", these terms are not used without qualification, but refer to the employment or appointment "as attorney". An attorney's work is contemplated both in the statute and contract of retainer. See Adams v. Murphy, 8 Cir., 165 F. 304; Pickett v. Truman, 333 Mo. 1018, loc. cit. 1030, 64 S.W.2d 105. Appellant was not a mere clerk, subordinate or errand boy. He earned his attorney's fees by serving as an attorney. He earned most of his income from cases brought to him by the Collector, because the Collector did not choose to appoint other attorneys to perform parts of the services; the County in which appellant was appointed was a large county and times were bad so that many delinquent tax cases accrued.

It must be remembered that tax immunity is granted to States, and when allowed to individuals is only derivative. In Helvering v. Gerhardt, 304 U.S. 405, loc. cit. 421, 58 S.Ct. 969, loc. cit. 976, 82 L. Ed. 1427, the Supreme Court said, "When immunity is claimed from a tax laid on private persons, it must clearly appear that the burden upon the state function is actual and substantial, not conjectural. Willcuts v. Bunn [282 U.S. 216, 231, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260]. The extent to which salaries in business or professions whose standards of compensation are otherwise fixed by competitive conditions may be affected by the immunity of state employees from income tax is to a high degree conjectural."

Appellant urges particularly the decision of the Court of Appeals of the District of Columbia in Brown v. Helvering, 68 App.D.C. 332, 97 F.2d 189. In that case the court held the remuneration of a statutory attorney for the collection of delinquent land taxes in the state of Tennessee to be exempt from federal income tax.

It appears from the opinion that under the Tennessee law the entire delinquent tax lists were turned over to the attorney after a certain stage of the tax collection process was reached, and the county treasurer was thereafter released from all liability and had no further authority as to any subsequent collection of taxes. The taxpayers thereafter dealt with the attorney. The court said as to the attorney [page 190]: "Petitioner has been reappointed annually during the entire period in question. He devotes all his time to the discharge of his duties, has an office in the county courthouse, and has assigned to him two assistants paid by the county out of county funds. Hence, as we have seen, his appointment is statutory, his duties are fixed by law, his compensation is made a lien upon the land as a part of the tax when the suit is filed, and is paid only out of the tax collected."

We think the case at bar may be distinguished upon its facts.

Affirmed.